[661 NYS2d 293]

Thomas Majewski, Appellant, v Broadalbin-Perth Central School District, Defendant and Third-Party Plaintiff-Appellant. Adirondack Mechanical Corporation, Third-Party Defendant-Respondent.

Third Department, July 10, 1997

## APPEARANCES OF COUNSEL

*Caputo, Aulisi & Skoda,* Gloversville *(Robert F. Doran [Thorn & Gershon],* Albany, of counsel), for appellant.

*Maynard, O'Connor, Smith, Catalinotto & D'Agostino, L. L. P.,* Albany *(Christine K. Krackeler* and *Brendan F. Baynes* of counsel), for defendant and third-party plaintiff-appellant.

*James P. O'Connor,* New York City, and *Thuillez, Ford, Gold & Conolly,* Albany *(Michael J. Hutter* of counsel), for third-party defendant-respondent.

*Menagh, Trainor, Mundo & Falcone, P. C.,* New York City *(Christopher A. Bacotti* and *Douglas D. Menagh* of counsel), for Electrical Employers Self Insurance Safety Plan, *amicus curiae.*

*Edward B. Flink & Associates,* Latham *(Edward B. Flink* of counsel), for Peerless Insurance Company, *amicus curiae.*

*Dennis C. Vacco, Attorney-General,* Albany *(Michael S. Buskus, Barbara G. Billet* and *Peter H. Schiff* of counsel), for State of New York, *amicus curiae.*

*Schneider, Klenick, Weitz, Damashek & Shoot,* New York City *(Brian J. Shoot, Robert E. Lahm* and *Harry Steinberg* of counsel), for New York State Trial Lawyers Association, *amicus curiae.*

## OPINION OF THE COURT

MERCURE, J.

The sole issue presented on this appeal is whether sections 2 through 9 of the Omnibus Workers' Compensation Reform Act of 1996 (*see,* L 1996, ch 635 [eff Sept. 10, 1996] [hereinafter the Omnibus Act] should be applied to claims pending but not yet reduced to final judgment on the effective date of the Omnibus Act. For the reasons that follow, we held that these sections should not be so applied. Accordingly, we reverse the order appealed from.

In October 1994, plaintiff allegedly fell from a ladder and sustained personal injuries while employed by third-party defendant for the purpose of performing repair work at defendant's premises. In December 1995, plaintiff commenced this action against defendant to recover for his personal injuries and defendant, in turn, commenced a third-party action seeking contribution and/or indemnification from third-party defendant. Third-party defendant thereafter moved for summary judgment dismissing the third-party complaint on the basis of the amendment to Workers' Compensation Law § 11 by the

Omnibus Act, which eliminates, except in cases of "grave injury"—a statutorily defined threshold for catastrophic injuries which plaintiff concedes he has not met (see, L 1996, ch 635, § 2)—an employer's liability "for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment" (Workers' Compensation Law § 11, as amended by L 1996, ch 635, § 2). Supreme Court, expressly finding that the Omnibus Act applied to pending claims and impliedly finding that plaintiff had not sustained a grave injury, granted the motion (169 Misc 2d 429). Plaintiff and defendant appeal.

Before reaching our dispositive analysis, we pause briefly to discuss Workers' Compensation Law § 11. Although Workers' Compensation Law § 11 ordinarily bars an injured employee from suing his or her employer for common-law tort damages, it had long been the rule in New York, "plac[ing] it in a distinct minority among the states" (Alexander, 1996 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C1401:4, 1997 Pocket Part, at 153), that a defendant in a personal injury action arising out of a workplace-related accident had an unlimited ability to bring a separate action or a third-party action against the injured employee's employer for contribution or indemnification with respect to the damages recovered or sought by the injured employee (see, Dole v Dow Chem. Co., 30 NY2d 143; Westchester Light. Co. v Westchester County Small Estates Corp., 278 NY 175). In Dole v Dow Chem. Co. (supra), the Court of Appeals concluded that the sued tortfeasor had the right to interpose a contribution claim against any other alleged tortfeasor and, if necessary, to join other tortfeasors as parties (see, supra, at 152-153). The right to apportionment of liability among parties involved in causing damage by negligence rested on relative responsibility and was determined by the jury (see, supra, at 153). Article 14 of the CPLR, enacted in 1974, codified Dole.

The Omnibus Act greatly restricted the occasions when an employer could be liable for contribution or indemnification as a result of a personal injury action commenced by one of its employees against a third party (see, L 1996, ch 635). Workers' Compensation Law § 11, as amended, permits third-party claims against employers only when (1) the defendant proves, through competent medical evidence, that the plaintiff sustained a " 'grave injury' ", or (2) the defendant's right to contribution or indemnification for the type of loss suffered is preserved in a written agreement which was entered into prior

to the accident (Workers' Compensation Law § 11, as amended by L 1996, ch 635, § 2). Sections 3 through 8 of the Omnibus Act enact necessary conforming changes to Workers' Compensation Law § 29 (6) and CPLR 1401, 1601 (1); 1602 (4) and (12) and 1603 (*see*, L 1996, ch 635, §§ 3-8). Section 9 of the Omnibus Act adds a new article 18-A to the General Obligations Law, *inter alia*, protecting fellow employees as well as employers from third-party *Dole* claims (*see*, L 1996, ch 635, § 9). Section 90 of the Omnibus Act states nothing about retroactive application of sections 2 through 9, providing only that those sections "shall take effect immediately" (L 1996, ch 635, § 90).

At the outset, we note our agreement with the Second Department's determination in *Morales v Gross* (230 AD2d 7) that the relevant sections of the Omnibus Act are inapplicable to third-party actions pending on its effective date. We agree with the Second Department that the text of the Omnibus Act, as well as the greater weight of its legislative history, support the conclusion that the subject amendments should be accorded a prospective application.

We begin, and essentially conclude, our analysis with a consideration of the actual language used by the Legislature. Whether, and to what extent, a statute is to be applied retroactively generally requires a determination of legislative intent (*see*, *Longines-Wittnauer Watch Co. v Barnes & Reinecke*, 15 NY2d 443, 453, *cert denied sub nom. Estwing Mfg. Co. v Singer*, 382 US 905; *see also*, McKinney's Cons Laws of NY, Book 1, Statutes § 51 [b], [d]). Numerous cases restate and apply the classic canons of statutory construction and these principles provide helpful guideposts for our analysis. "[T]he reach of the statute ultimately becomes a matter of judgment [however] made upon review of the legislative goal" (*Matter of Duell v Condon*, 84 NY2d 773, 783, citing *Becker v Huss Co.*, 43 NY2d 527, 540-541).

It is useful to state the familiar principles. It is axiomatic that amendments are prospective only unless there is a clear indication that retroactive application was intended (*see*, *Matter of Duell v Condon, supra*, at 783; *Dorfman v Leidner*, 76 NY2d 956, 959; *Becker v Huss Co., supra*, at 540; *Matter of Deutsch v Catherwood*, 31 NY2d 487, 489-490; *Jacobus v Colgate*, 217 NY 235, 240; *see also*, McKinney's Cons Laws of NY, Book 1, Statutes § 51 [b], [c]; § 52). Put another way, substantive statutes are presumed to have only prospective effect (*see*, *Jacobus v Colgate, supra*, at 240), while the rule is exactly the opposite if the statutory amendment merely effects a proce-

dural change (*see, Longines-Wittnauer Watch Co. v Barnes & Reinecke, supra,* at 453; *see also,* McKinney's Cons Laws of NY, Book 1, Statutes § 55). The principle requiring a clear expression that retroactive application was intended is important because "such a statement constitutes evidence that the Legislature has affirmatively assessed the potential for unfairness created by retroactivity and concluded that it is an acceptable price to pay for the anticipated benefits" (*Morales v Gross, supra,* at 10).

Third-party defendant concedes that the Legislature did not expressly provide for retroactivity of sections 2 through 9 of the Omnibus Act, but, relying upon *Becker v Huss Co.* (*supra,* at 539-542) and *Matter of Cady v County of Broome* (87 AD2d 964, *lv denied* 57 NY2d 602), asserts that the language "shall take effect immediately" (L 1996, ch 635, § 90) and the statutory presumption of prospective application relied on by plaintiff and defendant did not preclude a determination of retroactive legislative intent. We disagree. We note first that the language "shall take effect immediately" has been held to provide "a clear indication that prospective application is appropriate" (*Matter of Moynihan v New York State Employees' Retirement Sys.,* 192 AD2d 913, 914; *see, Matter of Lusardi v Eugene Lusardi, M.D., P. C.,* 167 AD2d 3, 4; *Fuerst v Fuerst,* 131 AD2d 426, 428; *County of Rensselaer v City of Troy,* 120 AD2d 796, 797-798; *Murphy v Board of Educ.,* 104 AD2d 796, 797-798, *affd* 64 NY2d 856). Nor does *Becker v Huss Co.* (*supra*), involving an amendment that required the sharing of litigation expenses between the workers' compensation lienor and the plaintiff (*see,* L 1975, ch 190, § 1, amending Workers' Compensation Law § 29 [1]), require a contrary result. There, the Court of Appeals applied an amendment to the Workers' Compensation Law which was to be "effect[ive] immediately" (L 1975, ch 190, § 3) to all litigation not finally resolved by judgment or settlement (*see, Becker v Huss Co., supra,* at 539-542). In deciding, in the face of equivocal statutory language, what interpretation should be given, the Court observed that neither "the available legislative studies or proposed bills furnish[ed] guidance" (*supra,* at 541), "nor did the available proposed bills contain different language" (*supra,* at 539) and, thus, the Court was compelled to determine the retroactive reach of the statute in the face of this "legislative omission" (*supra,* at 541).

Here, on the other hand, the Legislature has provided us with some guidance. First, an earlier version of the Omnibus

Act contained specific language of retroactivity; in fact, it provided explicitly that: *"sections two through nine* of this act [sections that would have limited the employers' liability for contribution or indemnification] *shall apply* to accidents occurring on or after the date on which it shall have become a law and also *to accidents occurring prior to such date for which a lawsuit has neither been settled nor reduced to judgment* on such date" (1996 NY Senate Bill S7164 § 77 [emphasis supplied]). The deletion of this explicit language from the version of the Omnibus Act that finally passed is persuasive evidence that the Legislature rejected the retroactive application of sections 2 through 9 of the Omnibus Act (*see, People v Korkala*, 99 AD2d 161, 166 ["Although such deletion does not conclusively establish the intent of the (L)egislature * * * such rejection of a specific statutory provision is a significant consideration when divining legislative intent"]; *see also, Becker v Huss Co., supra*, at 539, 541).

Second, although section 90 of the Omnibus Act states that "[t]his act shall take effect immediately", it also sets forth specific effective dates for certain other sections of the Omnibus Act, both prospective and retroactive. Omnibus Act § 90 states that "section fifty-seven of this act shall take effect 180 days after it shall have become a law and shall apply to all claims pending on or after such date" and that "section seventy-nine of this act shall take effect September 1, 1997 and shall apply to all claims filed on or after such date". Section 90 of the Omnibus Act also provides that "sections forty-nine through fifty-one of this act shall take effect immediately and shall be deemed to have been in full force and effect on and after April 1, 1996". If the Legislature intended for the application of sections 2 through 9 of the Omnibus Act to pending actions it could easily have stated as much, as it did with a number of other sections (*see, Morales v Gross*, 230 AD2d 7, 10, *supra*; *Flynn v New York Life Ins. Co.*, NYLJ, Oct. 24, 1996, at 31, col 3 [Sup Ct, Suffolk County, Doyle, J.]), and the omission of any express provision of retroactive application of such sections is strong evidence that such application was not intended but, rather, the customary interpretation of the phrase "shall take effect immediately" was to apply (*see, e.g., Matter of Moynihan v New York State Employees' Retirement Sys.*, 192 AD2d 913, 914, *supra*).

We also reject the argument that the provisions in question are remedial in nature, justifying an exception to the general rule requiring prospective effect. The State, as *amicus*, contends

that the partial repeal of *Dole v Dow Chem. Co.* (30 NY2d 143, *supra*) was part and parcel of a comprehensive reform and compromise during the legislative process and that, as such, it should be given comprehensive effect. Again, we disagree. The development of the law of contribution in New York, culminating with *Dole v Dow Chem. Co.* (*supra*), was based upon the equitable principle that the loss should be shared by all wrongdoers. In contrast, the purpose of the Omnibus Act "was to abolish most third-party actions so as to enhance the exclusivity of the Workers' Compensation Law, thereby reducing insurance premiums and decreasing the cost of doing business in New York" (*Morales v Gross, supra,* at 12). The subject provisions alter settled law governing the apportionment of damages and accordingly represent a material, substantive departure from prior New York law (*see, supra,* at 12; *Gleason v Holman Contract Warehousing*, 170 Misc 2d 668, 680-681).

We do not share Supreme Court's view that a prospective only application of sections 2 through 9 of the Omnibus Act would render meaningless section 88 of the Omnibus Act, thereby violating the rule of construction favoring an interpretation of a statute that does not render any of its provisions ineffective (*see,* McKinney's Cons Laws of NY, Book 1, Statutes § 144). Section 88 of the Omnibus Act mandates an audit of all workers' compensation insurance carriers and the State Insurance Fund to determine "the value as of December 31, 1996 of any reduction in reserves * * * that result from the application of [*inter alia,* sections 2 through 9 of the Omnibus Act]" (L 1996, ch 635, § 88 [a]), and requires such carriers to pay the State's general fund the amount which had been overpaid by employers for the impleading risk that existed prior to the enactment of the Omnibus Act. Section 87 of the Omnibus Act imposes a $98 million special assessment that is to be deposited in the general fund of the State (*see,* L 1996, ch 635, § 87).

Contrary to Supreme Court's determination, we concur in the view that these provisions would have meaning under a purely prospective application of the statute. In our view, records of the premiums that had been paid by employers for coverage during the time period from September 10, 1996 until December 31, 1996, which premiums included higher rates due to the risk of impleader, would be subject to the audit provided for in section 88 of the Omnibus Act (*see, Morales v Gross, supra,* at 14; *Lopes v Cunnane Dev. Corp.*, NYLJ, Mar. 10, 1997, at 32, col 2 [Sup Ct, Westchester County, Colabella, J.]; *Frycek v Corning Inc.*, 171 Misc 2d 220, 224; *see also,* Shoot & Stein-

berg, *The Omnibus Workers' Compensation Reform Act of 1996, And Its Effect On The Dole-Dow Rule*, 27 Trial Law Q 32, 44-45 [No. 2, Winter 1997]; *but see, Weiner v Lincoln/A. Pentair Co.*, NYLJ, Mar. 25, 1997, at 30, col 5 [Sup Ct, Nassau County, Lockman, J.]; *Johnson v Space Saver Corp.*, 172 Misc 2d 147, 155-156). Moreover, as two commentators have noted, there is nothing in the law itself indicating the reason for the assessment, and the Legislature often imposes assessments without effecting statutory amendments (*see*, Shoot & Steinberg, *The Omnibus Workers' Compensation Reform Act of 1996, And Its Effect On The Dole-Dow Rule*, 27 Trial Law Q 32, 45 [No. 2, Winter 1997] ["Since 1982, more than $1.9 billion has been siphoned off * * * from workers' compensation reserves to help balance the [S]tate budget * * *. In each instance, the legislative intent was the same: money was needed to balance the budget, and the insurance reserves proved an inviting source. End of story." (citation omitted)]; *see also, Morales v Gross, supra*, at 14-15).

Based upon our determination that the legislative intent is clear and discernible from the language of the Omnibus Act, there is no need to resort to legislative history as an aid in statutory construction (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 76). Even if this were not the case, we conclude that the evidence of legislative intent for prospective application only is more persuasive than the evidence supporting retroactive application of sections 2 through 9 of the Omnibus Act.

Supreme Court, in its determination to apply sections 2 through 9 of the Omnibus Act retroactively, found evidence of legislative intent in the Governor's Approval Memorandum, which provided that the new system was "enacted with the specific intent of maximizing savings in workers' compensation premiums through its application to all cases currently pending in the courts of our State wherein the primary action has neither been settled nor reduced to judgment" (Governor's Mem Approving L 1996, ch 635, 1996 McKinney's Session Laws of NY, at 1913). Plaintiff and defendant contend that the issue of retroactivity is for the Legislature, and not the Governor to determine, and that the statement of Majority Leader Michael Bragman, that sections 2 through 9 of the Omnibus Act were not intended to be applied retroactively—made immediately prior to the Assembly's vote on the Omnibus Act—should control. Third-party defendant, relying on *Woollcott v Shubert* (217 NY 212) and *Matter of Daniel C.* (99 AD2d 35, *affd* 63

NY2d 927), argues that the statements of legislators made during debates are not a proper guide in ascertaining a statute's meaning. Those cases are premised, however, on the undisputed maxim that, in the face of clear and unambiguous statutory language, there shall be no resort to legislative history (*see,* McKinney's Cons Laws of NY, Book 1, Statutes §§ 76, 92 [b]; *see also, Woollcott v Shubert, supra,* at 222; *Matter of Daniel C., supra,* at 41). As previously noted, we consider the legislative history of the Omnibus Act only for the purpose of setting forth an alternative basis for our determination.

In our view, both the Governor's Approval Memorandum (*see, Matter of Pirro v Angiolillo,* 89 NY2d 351, 358 [utilizing Executive Mem in Support to interpret Penal Law § 60.01.(2)(d)]; *Shiles v News Syndicate Co.,* 27 NY2d 9, 16-17, *cert denied* 400 US 999; *see also,* McKinney's Cons Laws of NY, Book 1, Statutes § 14, at 45 ["The Governor's function in approving or disapproving bills submitted by the Legislature is legislative in nature"]) and Bragman's statements (*see, e.g., Schultz v Harrison Radiator Div. Gen. Motors Corp.,* 90 NY2d 311, 318 [according the statements of legislators made during legislative debates "some weight (on the question of legislative intent regarding CPLR 5041 [e]) in the absence of more definitive manifestations of legislative purpose"]; *Wetherill v Eli Lilly & Co.,* 89 NY2d 506, 513 [utilizing Senate Introducer's Mem in Support of the Silicone Revival Statute to interpret CPLR 214-c (2)]) may be considered with regard to deciphering legislative intent (*see, Wisconsin Pub. Intervenor v Mortier,* 501 US 597, 610, n 4). Weighing this evidence of legislative intent, we agree with a noted commentator that, while the Governor's opinion on the matter must be respected, "the retroactivity issue is for the [L]egislature to determine in enacting the bill, rather than for the [G]overnor to determine in signing it [and] if the Assembly proceedings are to be credited, then the bill was not destined for retroactivity when it arrived on the [G]overnor's desk and its course in that regard could not thereafter be changed" *(Cases Against Retroactivity of Omnibus Workers' Compensation Act Predominate; Third Department Calendars Appeal,* 55 Siegel's Practice Rev 1 [Mar. 1997]).

Completing our consideration of the issue of legislative history, we also note that the report of the New York State Assembly Majority Task Force on Workers' Compensation Reform, prepared by Speaker of the Assembly Sheldon Silver, Bragman and Catherine Nolan, also provides support for the argument for prospective application only (*see, Wisconsin Pub.*

*Intervenor v Mortier, supra,* at 610, n 4; *Woollcott v Shubert,*
217 NY 212, 222, *supra*). Containing a "Questions/Answers"
section which, mirroring the debate prior to the Assembly
vote, explicitly provided for prospective application only (*see,*
July 1996 Report of the NY Assembly Majority Task Force on
Workers' Compensation Reform, at 25-26), the report states
that "[a]ny accidents that occur [from the date the bill is
signed] forward will be subject to the 'grave injury' standard"
(*id.,* at 16).

Based upon the foregoing, we conclude that the clear legisla-
tive intent underlying sections 2 through 9 of the Omnibus Act
was that those provisions apply prospectively only. As such,
they shall not apply to actions pending on September 10, 1996.
In view of that determination, we need not consider the ad-
ditional issue of whether the Legislature would have been
constitutionally empowered to apply the legislation retroac-
tively.

MIKOLL, J. P., CREW III, YESAWICH JR. and PETERS, JJ.,
concur.

Ordered that the order is reversed, on the law, with one bill
of costs, and motion denied.