Ray W. KLINE and Dorothy M. Kline, his spouse Plaintiffs,

v.

E.I. DuPONT DE NEMOURS & CO., INC., et al. Defendants.

E.I. DuPONT DE NEMOURS AND COMPANY and Allied–Signal, Inc., Defendants and Third–Party Plaintiffs,

v.

THE GOODYEAR TIRE & RUBBER COMPANY, Third–Party Defendant.

CHEMFIRST INC., successor-in-interest to First Chemical Corporation and First Mississippi Corporation, and First Mississippi Corporation and First Chemical Corporation, Defendants and Third–Party Plaintiffs,

v.

THE GOODYEAR TIRE & RUBBER COMPANY, Third–Party Defendant.

No. 97–CV–0290A.

United States District Court, W.D. New York.

July 16, 1998.

Steven H. Wodka, Little Silver, NJ, Lipsitz & Ponterio, LLC (John N. Lipsitz, of counsel), Buffalo, NY, for Ray W. Kline and Dorothy M. Kline.

Phillips, Lytle, Hitchcock, Blaine & Huber (Paul F. Jones, of counsel), Buffalo, NY, for E.I. DuPont De Nemours & Co., Inc. and Allied–Signal, Inc.

Gibson, McAskill & Crosby (David W. Kloss, of counsel), Buffalo, NY, for Chem-First Inc., First Mississippi Corp., and First Chemical Corp.

Volgenau & Bosse (Diane F. Bosse, Norman E.S. Greene, of counsel), Buffalo, NY, for Goodyear Tire & Rubber Co.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

This case was referred to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1) on June 24, 1997. On August 18, 1997, third-party defendant The Goodyear Tire & Rubber Company filed a motion for judgment on the pleadings or for summary judgment. On March 17, 1998, Magistrate Judge Foschio filed a Report and Recommendation, recommending that third party defendant Goodyear's motion for judgment on the pleadings or, alternatively, for summary judgment, should be granted.

Defendants filed objections to the Report and Recommendation on April 29, 1998. Oral argument on the objections was held on June 19, 1998.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation. Moreover, the Court writes separately to address cases decided after this motion was submitted for the Magistrate Judge's consideration.

### A. *Recent Developments*

On May 12, 1998, the Court of Appeals of New York decided *Majewski v. Broadalbin–Perth Central School District,* 91 N.Y.2d 577, 673 N.Y.S.2d 966, 696 N.E.2d 978, 1998 WL 248915. In *Majewski,* the plaintiff was injured and filed suit, and the third-party defendant was impleaded, prior to the effective date of the Omnibus Workers' Compensation Reform Act of 1996 ("the Act"). The Court of Appeals determined that the Act did not apply to actions, such as Majewski's, that were pending on the effective date of the Act.

In reaching this holding, the Court of Appeals examined the text of the Act and found that language stating that the Act was to "take effect immediately" did not indicate that the Act was to apply to actions filed prior to the Act's effective date. The Court of Appeals also examined the legislative history of the Act and determined that the various statements made by legislators and Governor Pataki were inconclusive with respect to the question of retroactivity. Finally, the Court of Appeals analyzed the Act's purpose and found that it was best served by a prospective application of the Act.

The Court of Appeals held that the Act would not apply in that case as it was filed prior to the Act's effective date. Significantly for the present case, the Court of Appeals summarized its holding at the end of the decision as follows:

> We conclude that, *irrespective of the date of the accident,* a prospective application of the subject legislation to actions by employees for on-the-job injuries against third parties filed after the effective date

of the relevant provisions is eminently consistent with the overall and specific legislative goals behind passage of the Act.

91 N.Y.2d 577, 589, 673 N.Y.S.2d 966, 696 N.E.2d 978, 984 (emphasis added). The Court of Appeals included the phrase "irrespective of the date of the accident" despite the fact that in its lengthy analysis of the statute's retroactivity, it had not discussed the significance of the date of the accident giving rise to the action. The Court of Appeals' decision instead seems to place primary importance on the date of the filing of the action.

The Second Department decided *Zurheide v. S–C Associates*, 669 N.Y.S.2d 852 (N.Y.App.Div.1998), on March 2, 1998, also subsequent to the submission of this motion to the Magistrate Judge, but prior to the *Majewski* decision. In that case the court, in a two-paragraph decision, stated that the Act is to be applied prospectively and thus was inapplicable "where the underlying injury occurred before the effective date of the amendment." Although *Zurheide* was decided shortly before the Court of Appeals' decision in *Majewski*, the *Majewski* court did not mention *Zurheide* in its decision.

## B. *The Parties' Arguments*

In objecting to the Report and Recommendation, defendants claim that the Act's amendments do not apply where, as here, the injury occurred prior to the Act's effective date, but the action is filed after the effective date. Defendants point to the Second Department's *Zurheide* decision in support of this argument. Defendants also claim that this Court is not bound to follow the language in the *Majewski* decision finding the Act applicable "irrespective of the date of the accident" where the action is filed after the Act's effective date. Characterizing this language as dicta, defendants claim that this statement does not represent the state of the law in New York, and that the Court should look to the *Zurheide* decision for guidance. Moreover, defendants argue, by not expressly overruling the *Zurheide* decision, the Court of Appeals in *Majewski* implicitly approved of that holding. Defendants also rely on *Majewski*'s analysis of the prospective application of the Act as support for their position.

The third-party defendants, of course, rely on the *Majewski* decision's statement that the Act's amendments are effective when the action is filed after its effective date "irrespective of the date of the accident." The third-party defendants argue that this language is not dicta, and that even if it is dicta, it is a pronouncement of the highest court of the state and is binding on this Court in its interpretation of state law.

## DISCUSSION

As Magistrate Judge Foschio correctly noted, in a diversity case, this Court must follow state substantive law. "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assoc.*, 14 F.3d 114, 119 (2d Cir.1994). To predict how the New York Court of Appeals would rule, a federal court must give "the fullest weight to the pronouncements of the New York Court of Appeals." *Id.* Where the highest court of a state has not resolved an issue, the Second Circuit has held that a federal court "must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id.*

Here, the Court of Appeals in *Majewski* determined that the Act does not apply to actions filed prior to the Act's effective date. The Court of Appeals did not, however, directly decide the issue in the present case: whether the Act applies to actions filed after the effective date where the injury giving rise to the action occurred before the effective date. The Court of Appeals' language at the end of its decision, stating that the Act applies to actions filed after the effective date, "irrespective of the date of the accident," would resolve this issue in favor of the third-party defendants should the Court follow it. Defendants urge against this result, characterizing the language as "dicta."

The Second Circuit has not squarely addressed how a federal court should treat the

dicta of the highest court of a state in predicting state law. In one case, the Second Circuit found that a statement of law in dicta in a Court of Appeals decision was binding on the federal courts since "the lower courts of that state have taken it as authoritative, and so must we." *Newburgh Land & Dock Co. v. Texas Co.*, 227 F.2d 732 (2d Cir.1955). However, that is not the case here, as it does not appear that any lower court in New York has yet accepted the dicta in issue as authoritative.

Other circuits have more recently discussed the role of dicta in predicting state law and have indicated that federal courts may look to dicta as a reliable means of forecasting the course of state law. The Sixth Circuit has stated that the decisions of a state's intermediate appellate courts "serve as a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise... Other persuasive data include the state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states." *Kurczi v. Eli Lilly and Co.*, 113 F.3d 1426, 1429 (6th Cir.1997). Under this framework, it would seem that the dicta of the state's highest court may trump the decisions of lower appellate courts. The Third Circuit has also addressed the significance to be accorded to dicta in predicting state law, stating that "[w]e have recognized, along with respected commentators, that [c]onsidered dicta by the state's highest court may provide a federal court with reliable indicia of how the state tribunal might rule on a particular question, and be considered conclusive particularly if it is a carefully considered statement by the state court." *Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church*, 98 F.3d 78, 92 (3d Cir.1996) (internal quotations and citations omitted).

The Court has located one case in which a federal court determined that it would follow a lower appellate court decision that contradicted dicta from the state's highest court. *See Travelers Indemnity Co. of Illinois v. DiBartolo*, 131 F.3d 343 (3d Cir.1997). However, that case is readily distinguishable from the present one. In the *Travelers* case, the lower state court, whose precedent the Third Circuit chose to follow, had decided the case after the Pennsylvania Supreme Court's decision containing the contradictory dicta. Here, in contrast, the Second Department decided the *Zurheide* case before the Court of Appeals decided *Majewski*, depriving the Court in this case of the benefit of seeing how the lower state court would interpret the dicta of the state's highest court. Moreover, the Third Circuit in *Travelers* emphasized that the lower state court decision it followed contained "compelling reasoning," *id.* at 348. In this case, defendants' argument that the Court should follow a two-paragraph decision by a lower state court rather than the Court of Appeals' dicta is not persuasive.

 The Court concludes that in the present case, the statement by the New York Court of Appeals that the Act's amendments are to apply to all actions filed after the Act's effective date, "irrespective of the date of the accident," is a very strong indicator of how the Court of Appeals would rule on the issue in this case. Even if this statement is dicta, it is a statement by the highest court of New York state. As discussed above, the dicta of the highest state court may be considered by a federal court in predicting state law. In the absence of any persuasive evidence that the Court of Appeals would decide this issue differently, this Court is bound to follow the statement of the Court of Appeals in *Majewski*. Thus, the Court finds that the Act applies to this action, and defendants' objections must be denied.[1]

### CONCLUSION

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, and the reasons discussed above, third-party defendant Goodyear's motion for judgment on the pleadings or, alter-

---

1. Since the Court finds that the Act applies whether the injury occurred before or after the effective date of the Act, the Court does not reach the issue of when plaintiff's injury should be considered to have occurred.

natively, for summary judgment is granted. This case is hereby referred back to Magistrate Judge Foschio for further proceedings.

IT IS SO ORDERED.

### REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned by the Hon. Richard J. Arcara on June 24, 1997 for report and recommendation on any dispositive motions. The matter is presently before the court on Third–Party Defendant's motion for judgment on the pleadings or for summary judgment, dated August 18, 1997.

### *BACKGROUND*

Plaintiffs, Ray W. Kline and Dorothy M. Kline, filed this diversity action on April 18, 1997 alleging causes of action against Defendants E.I. DuPont De Nemours & Co. ("DuPont"), Allied–Signal, and ChemFirst for strict product liability and negligence relating to Plaintiff Ray Kline's ("Kline") exposure to the chemical ortho-toluidine, manufactured by those Defendants, during Kline's employment with The Goodyear Tire & Rubber Company ("Goodyear") in Niagara Falls, New York during the period from 1962 through 1990. An amended complaint was filed as of right on April 28, 1997, adding First Chemical Corporation and First Mississippi Corporation as Defendants.

On June 20, 1997, DuPont and Allied Signal filed a third-party complaint against Goodyear, Plaintiff's employer, seeking contribution and/or indemnification for any judgment. On July 1, 1997, First Mississippi, First Chemical, and ChemFirst filed a third-party complaint against Goodyear also seeking contribution and/or indemnification.

On August 18, 1997, Goodyear filed a motion for judgment on the pleadings or for summary judgment, along with a supporting memorandum of law and a statement of undisputed facts, on the ground that any contribution or indemnification claims against it were barred by the Omnibus Worker's Compensation Reform Act of 1996, recently enacted in New York State.

On the same day, Goodyear filed an answer to the third-party complaint, a cross-claim against DuPont and Allied Signal, and a counterclaim against ChemFirst, First Mississippi, and First Chemical.

On October 20, 1997, DuPont and Allied Signal filed a memorandum of law in opposition to Goodyear's motion, along with a counter-statement of undisputed facts, and an affidavit from Paul F. Jones, Esq., defense counsel. On October 21, 1997, ChemFirst, First Mississippi, and First Chemical filed a memorandum of law in opposition, and an affidavit from David W. Kloss, Esq., defense counsel. Thereafter, on November 14, 1997, Goodyear filed a reply memorandum of law, along with an affidavit from Plaintiff Ray W. Kline. A surreply memorandum of law was filed on December 19, 1997 by DuPont and Allied Signal, and a surreply affidavit was filed by ChemFirst, First Mississippi and First Chemical on December 22, 1997. An amended surreply memorandum of law was filed by DuPont and Allied Signal on December 23, 1997.

Oral argument on the matter was deemed not necessary.

For the reasons as set forth below, Third–Party Defendant Goodyear's motion for judgment on the pleadings and/or for summary judgment should be GRANTED.

### *FACTS*

Plaintiff Ray W. Kline was employed by Goodyear in Niagara Falls, New York beginning in 1961, presently working as Maintenance Supervisor. During the course of his employment, from 1962 through 1990, Kline claims that he was exposed to fumes, vapor and liquid of the chemical substance ortho-toluidine.

In February, 1997, Kline was diagnosed with bladder cancer. Kline, whose employment with Goodyear remains ongoing, first lost time from work at the time of his diagnosis with cancer in February, 1997.

### DISCUSSION

■ Defendant Goodyear has filed a motion for judgment on the pleadings on the ground that the New York Omnibus Workers Compensation Reform Act of 1996 bars any claim against it, as Kline's employer, for contribution and/or indemnification.[1] The same standard that is used in deciding a motion under Fed.R.Civ.P. 12(b)(6) is applicable in determining a motion under Fed. R.Civ.P. 12(c) for a judgment on the pleadings. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). Under that test, a court must accept all allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant. *Shechter v. Comptroller of the City of New York,* 79 F.3d 265, 270 (2d Cir.1996). A court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard, supra,* at 150 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

■ In a diversity action such as the instant action, because New York is the forum state, New York's choice-of-law rules will determine which state's substantive law should apply. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Machleder v. Diaz,* 801 F.2d 46 (2d Cir.1986). The question is, therefore, not what law the federal court would apply, "but what law the New York courts would apply." *O'Connor v. Lee–Hy Paving Corp.,* 579 F.2d 194, 205 (2d Cir.1978), *cert. denied,* 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978). Under New York's choice-of-law rule, the law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied. *See Index Fund, Inc. v. Insurance Company of North America,* 580 F.2d 1158 (2d Cir.1978); *Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). Further, when conflicting rules concern the allocation of loss rather than the regulation of conduct, the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy. *Pescatore v. Pan American World Airways, Inc.,* 97 F.3d 1, 13 (2d Cir.1996). In this case, as all of the incidents at issue in this action took place in New York, and as all parties have cited to New York law, the court concludes that all parties agree that New York law should apply to this action.

Under New York law, prior to 1996, a defendant had the right to make a third party claim against a plaintiff's employer even though the plaintiff was barred from suing the employer directly by the exclusive remedy provision of the New York Worker's Compensation Law, N.Y. Work.Comp.Law § 11 (McKinney 1995). *Dole v. Dow Chemical,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288, 294–95 (1972); N.Y. Civ. Proc. L. & R. § 1401. As such, New York permitted a defendant found liable for a plaintiff's injuries to recover partial or even full indemnity from a plaintiff's employer if the employer's negligence was also a proximate cause of the injuries. *Cappellini v. McCabe Powers Body Co.,* 713 F.2d 1, 6 (2d Cir.1983); *Dole v. Dow, supra,* at 294–95.

On September 10, 1996, New York State Governor George Pataki signed into law the Omnibus Workers' Compensation Reform Act ("the Act"), 1996 N.Y. Laws 635. The primary purpose of the Act was to repeal the decision of the New York Court of Appeals in *Dole v. Dow Chemical Co., supra* and Section 1401 allowing third-party actions against employers for indemnification or contribution for injuries sustained by employees in the scope of their employment. 1996 N.Y. Laws, 635 §§ 1, 2. Accordingly, Section 2 of the Act, which amended § 11 of the Workers' Compensation Law, provides in pertinent part as follows:

> An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of

1. Alternatively, Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56.

his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a "grave injury" . . . .

Furthermore, § 90 of the Act provides that this provision "shall take effect immediately." N.Y. Workers' Compensation Law § 90.

■ In this case, the parties agree that Kline's illness does not fall within the Act's limited "grave injury" exception. Goodyear argues that the clear language of § 11 of the Act, as amended effective September 10, 1996, bars the third-party claims against it for contribution and common law indemnification as both the diagnosis of Kline's illness and the initiation of this action took place in February, 1997, five months following the amendment of Section 11 of the Act. Defendants assert, however, that Kline's alleged exposure to the chemical ortho-toluidine took place from 1962 to 1990, well prior to the amendment of the Workers' Compensation Law, and that, as such, Kline's injury is not subject to the amendment which it argues has prospective effect on accidents or injuries taking place after the amendment's enactment on September 10, 1996.

■ Following the enactment of the Act, controversy has arisen as to whether Section 2 of the Act, Workers' Compensation Law § 11, barring third-party claims against employers, should be applied retroactively based upon the ambiguity of Section 90 of the Act in stating that the statute should take effect "immediately." Under New York law, the general rule is that statutes are construed as prospective only, with a retroactive construction to be determined based upon legislative intent and language which expressly or by necessary implication requires such construction. *Lagano v. Chrysler Corporation*, 957 F.Supp. 36, 38 (E.D.N.Y.1997).

The legislative history and language is conflicting in this case. In the New York State Assembly, on July 12, 1996, prior to the vote on the amendment of the Workers' Compensation Law, a colloquy between State Assembly Majority Leader Michael J. Bragman and Assembly Judiciary Chair Helene E. Weinstein developed with Weinstein expressly asking Bragman the meaning of the term "immediate effective date." Bragman indicated that "immediate effective date" meant that the Act would apply to any *accident* that occurred from the date forward of the signing of the bill, and that, as to the circumstance of a toxic tort where a worker had been chronically exposed to a toxic substance prior to the effective date of the Act but had not been diagnosed with a disease until after the effective date of the Act, the Act's bar on third-party claims against an employer would not be applicable. Appendix to Goodyear's Motion, Exhibit A, Transcript of Assembly Proceedings, dated July 12, 1996. However, the New York State Senate debate minutes reveal no such discussion as to whether the Act was intended to apply to pending claims or to claims arising after the effective date of the Act. Appendix, Exhibit D, New York State Bar Journal, February, 1997, "The Intended "Repeal" of *Dole v. Dow*: To Be Retroactive or Not to be Retroactive—That is the Question," at p. 43. In an early version of the New York Senate bill, Section 90 provided as follows: " . . . sections two through nine of this act [sections that would have limited the employer's liability for contribution or indemnification] shall apply to accidents occurring on or after the date on which it shall have become a law and also to accidents occurring prior to such date for which a law suit has neither been settled nor reduced to judgment on such date." 1996 N.Y. Senate Bill $7164 § 77. This language was omitted from the final version of the bill, with no other language substituted. Nonetheless, when ultimately signed into law, the Act was accompanied by a memorandum from Governor George Pataki stating that "[t]his new system, which takes effect immediately, is enacted with the specific intent of maximizing savings in workers' compensation premiums through its application **to all cases currently pending in the courts of our State wherein the primary action has neither been settled nor reduced to judgment.**" Governor's Memorandum accompanying the Act (emphasis added).

These contradictory statements signaling the intent of the legislation has led to the current dispute as to whether the provision should be applied retroactively. Despite a

split of authority at the trial court level, all four Appellate Divisions, in making a determination of the applicability of the amended Act to cases pending at the time of the amendment have held in favor of prospective application only. *See Golda v. Hutchinson Enterprises,* 668 N.Y.S.2d 816, 1998 WL 41560 at \*1 (N.Y.A.D. 4th Dep't.1998) (Workers' Compensation Law § 11 has no retroactive application to cases pending on the effective date of the amendment); *Doria v. Cooke Properties,* 664 N.Y.S.2d 798 (N.Y.A.D. 1st Dep't.1997) (amendment precluding third-party indemnity actions against employer to be applied prospectively in cases pending prior to effective date of amendment); *Majewski v. Broadalbin–Perth Central School District,* 231 A.D.2d 102, 661 N.Y.S.2d 293 (N.Y.A.D. 3rd Dep't 1997) (same); *Morales v. Gross,* 230 A.D.2d 7, 657 N.Y.S.2d 711 (N.Y.A.D. 2nd Dep't.1997) (same). As a federal court sitting in diversity, in the absence of convincing evidence that the New York Court of Appeals, the highest state court, would decide differently, these Appellate Division holdings are entitled to "persuasive, if not decisive consideration." *In re Eastern & Southern Districts Asbestos Litigation,* 772 F.Supp. 1380, 1389 (E. & S.D.N.Y.1991). Thus, this court adheres to the determinations of the four Appellate Divisions in finding that, as to cases pending at the time of the enactment of the reform to the Workers' Compensation Law, Section 11, barring third-party actions against a plaintiff's employer does not apply.

However, the instant case was not pending on September 10, 1996, the effective date of the Act. Indeed, Kline's illness was not diagnosed until February, 1997, notwithstanding the fact that his exposure to the chemical ortho-toluidine, alleged to have caused his cancer, took place from 1962 until 1990, well before the passage of the Act. Goodyear argues that the third-party action against it should be dismissed as this case clearly was not pending, nor was Plaintiff's cause of action even viable, as of September 10, 1996. Defendants, on the other hand, vehemently argue that, as Kline's exposure to the ortho-toluidine was from 1962 until 1990, prior to the September 10, 1996 enactment, Kline's date of injury pre-dates the passage of the Act, and thus any third-party claim relating to allegations of exposure prior to the Act's passage should be viable.

Defendants' argument has been adopted by some New York State trial courts, although the issue has yet to be ruled on by any of the Appellate Divisions or the New York Court of Appeals. In *Seymour v. Victor Balata Belting Company,* 174 Misc.2d 677, 665 N.Y.S.2d 1010 (N.Y.Sup.1997), the court held that Section 11 of the Workers' Compensation Law was effective only as to claims arising out of accidents occurring on or after the statute's effective date, regardless of the date on which the lawsuit was actually filed. In that case, the accident at issue occurred on October 6, 1995, prior to the statute's enactment, but the lawsuit was not filed until October 22, 1996, with the third-party claim alleged on May 16, 1997, both filings made after the date of the statute's enactment. The court held that the third-party claim was viable, notwithstanding the statute's enactment as the conduct at issue which allegedly caused the accident should be governed by the then-existing state of the law as any other interpretation would "subvert the intent of the contracting parties." *Seymour, supra,* at 1011. Stating that "since the present accident occurred before the effective date of the statute, and because the contractual relations [as to the terms of insurance coverage] among the parties were determined with reference to the older law, it is both proper and reasonable to determine the parties' respective rights with regard to that law," the court found that the statutory changes should apply only to accidents occurring on or after the effective date. *Seymour, supra,* at 1012.

This court does not agree with that analysis. First, the court notes that, the *Dole v. Dow* decision, and the codification of *Dole* in N.Y. Civ.Prac. L. & R. § 1401 two years later, was held by the New York Court of Appeals to be retroactive to pending cases. *Kelly v. Long Island Lighting Co.,* 31 N.Y.2d 25, 334 N.Y.S.2d 851, 286 N.E.2d 241 (1972).[2]

2. Significantly, both *Dole* and *Kelly* applied the

*Dole* rule to the pending case despite the fact that

Thus, employers were immediately subjected to third-party claims no matter when the underlying tort occurred or the basic lawsuit was commenced, rendering employers liable for indemnification and contribution where no such right previously existed. While Justice Harris, in *Gleason v. Holman Contract Warehousing, Inc.*, 649 N.Y.S.2d 647 (N.Y.Sup.1996), opines that "the result of the changes in the 'Omnibus Workers' Compensation Reform Act of 1996' is diametrically opposite to the result emanating from Dole [liability enhanced, not lessened] and requires a different view of the issue of retroactivity," this court does not agree. Indeed, the result of the change in the law at the time that Dole was decided was the same as the result emanating from the 1996 amendment to Section 11 of the Workers Compensation Law in that the liability for parties other than employers is now enhanced as there is no opportunity for contribution or indemnification from the employer. As noted, the *Dole* rule expanded the liability of the employer, nevertheless, the Court of Appeals applied the new rule to pre-decision accidents. *Kelly, supra.* The statute merely shifts the allocation of the burden of any judgment or settlement away from the employer. Moreover, in *Westchester Lighting Co. v. Westchester County Small Estates Corporation*, 278 N.Y. 175, 15 N.E.2d 567 (1938), the Court of Appeals approved, for the first time, an action for contribution against an employer by a defendant who had been sued by the decedent employee's widow. The court applied its ruling to a pre-decision accident. *Westchester Lighting Co., supra,* at 568–69.

■ Second, Section 11 of the Workers Compensation Law expressly states that the terms "indemnity" and "contribution" shall not include "a claim or cause of action for contribution and indemnification based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered." N.Y. Workers Compensation Law, § 11 (McKinney 1997).

Thus, any contracts for indemnification entered into prior to the Act's effective date are exempt from the Act's reform provisions, and any demonstrable expectations of indemnification or contribution reflected in business agreements remain undisturbed. As such, refusing to apply the Act to a pre-enactment accident would render § 11 superfluous, contrary to the established tenet of New York statutory construction that statutes should be construed to give effect to all of its provisions. *Scoglio v. County of Suffolk*, 85 N.Y.2d 709, 628 N.Y.S.2d 230, 651 N.E.2d 1249, 1251 (1995) (stating that it is a well settled tenet of statutory construction that effect and meaning must be given, if possible, to every part and word of a statute).

Third, Section 88 of the Workers' Compensation Law expressly mandated that, following the statute's enactment, an audit of all workers' compensation insurance carriers doing business in New York and the State Insurance Fund would be conducted to determine the value as of December 31, 1996 of any reductions in reserves that resulted from the application of the amendment, and to require carriers to pay to the State's general fund the amount which had been overpaid by employers for the impleading risk that existed prior to enactment of the Act. It appears to this court that this language means that the impleading risk would not exist following the enactment of the Act. This interpretation is consistent with the Appellate Division rulings holding the Act not applicable to pending actions as, as to pending actions, any impleading risk would have already been accounted for as opposed to any unknown lawsuits that may exist to be filed in the future. Any other interpretation would not abate an impleading risk to an employer as the statute of limitations periods for accidents or injuries, especially toxic tort injuries, occurring prior to the statute's enactment would remain open for significant periods of time, *see* N.Y. Civ. Prac. L. & R. § 214–c(2), (4) (McKinney 1997), and an employer or insurance carrier could never be sure as to the exact date that there could not possibly be any further allegations relating to pre-enactment injuries, thus relieving the employer or

New York law was clearly to the contrary at the time of the accident in *Dole* and *Kelly*.

carrier of any further impleading risk. The court also finds that a determination of whether or not insurance companies should be required to account for any "windfall" that the lack of an impleading risk would generate is a decision for the legislature and not for the courts.

Fourth, the language of the statute clearly states that it shall be in effect immediately. The term "immediate" means "made or done at once." Webster's Dictionary. Neither the State Assembly nor the State Senate acted to place exceptions in the statute to the word "immediate." The oft-quoted colloquy between State Assembly Leader Bragman and House Judiciary Committee member Weinstein did not serve to place into the statute any of the examples cited by Bragman and Weinstein, and, indeed, if such exceptions, such as the statement regarding toxic torts leaving the *Dole v. Dow* rule applicable to any actions arising out of exposures to toxic substances prior to September 10, 1986, had been placed into the legislation, given Governor Pataki's clear, unequivocal statement that the statute was to apply to all actions, it is highly possible that the Governor would have vetoed any legislation containing loopholes allowing for a continuation of any impleading risk to an employer. Bragman's and Weinstein's discussion was clearly a colloquy designed to place into the legislative record Bragman's intentions regarding the passage of the Act; as can be seen by Governor Pataki's later statements, Bragman's intentions were certainly not those of Pataki. To permit a colloquy between two members of the same legislative body to control legislation introduced by individual members of the legislature would allow interpretations by individual legislative members alone to express legislative intent on a statute required to be passed by both legislative bodies and signed into law by the governor.[3]

Fifth, Section 1 of the 1996 Reform Act expressly states that the purpose of the enactment of the Act was to reinstate the remedies provided by the Workers' Compensation Law as the exclusive remedies available to anyone as against an employer for injuries occurring in the workplace. Specifically, Section 1 states:

> It is the intent of the Legislature that the Workers' Compensation Law be interpreted and implemented in the spirit in which it was first enacted so that a safe workplace is insured, workers obtain necessary medical care benefits and compensation for workplace injuries, and employers obtain a degree of economic protection from devastating lawsuits ... It is the further intent of the Legislature to create a system which protects injured workers and delivers wage replacement benefits in a fair, equitable and efficient manner, while reducing time consuming bureaucratic delays, and repealing *Dole* liability except in cases of grave injury.

1996 Reform Act, Section 1.

■ It is clear to this court that, to achieve these purposes, the statute is designed to be effective as to all cases filed after September 10, 1996, regardless of the date of the accident or injury, as any other interpretation would cause a "phasing-in" of the remedial purposes of the legislation with a final effective date only to occur years in the future when there could no longer be a possibility of any pre-enactment accidents or injuries. There is nothing in the legislative history to establish any such intent on the part of the legislative bodies, and the court will not interpret the statute to permit such a phase-in of remedies.

In *Becker v. Huss Co., Inc.*, 43 N.Y.2d 527, 402 N.Y.S.2d 980, 373 N.E.2d 1205 (1978), the Court of Appeals addressed the retroactivity of an amendment to Section 29 of the Workers Compensation Law requiring a

---

3. In *Gleason, supra,* Justice Harris attempted to minimize the significance of the Governor's memorandum approving the Act on the basis that the Governor was "only one voice in the legislative process." *Gleason, supra,* at 652 n. 7. That characterization, however, fails to recall that the Governor's "voice" is always as strong as two-thirds less one of the members of both houses of the legislature. N.Y. Const. Art. 4 § 7 (McKinney 1997) (two-thirds vote of each house of legislature required to override governor's veto of bill). All bills approved by the legislature must be submitted to the governor. *Campaign for Fiscal Equity, Inc. v. Marino,* 87 N.Y.2d 235, 638 N.Y.S.2d 591, 661 N.E.2d 1372 (1995).

workers' compensation lienor to contribute to an employee's expenses in securing a third-party recovery. Similar to the 1996 amendment to Section 11, the 1975 amendment to Section 29 provided that it be "effective immediately." The Court of Appeals found that it could not characterize the amendment as either remedial (requiring retroactive application) or nonremedial (permitting prospective application only), and held that "recognition of the flexibility of the compensation law in achieving its social goals, and consideration of the practicalities and the realities offer more fruitful and sounder analysis." *Becker, supra,* at 1209. The court, noting that the direction that the amendment "be effective immediately" evinced a "sense of urgency," nonetheless observed that "identical language in other acts ha[d] not been enough to require application to pending litigation." *Id.* The court then went on to observe that the Workers' Compensation Law was a method for implementing an injured employee's right to monetary benefits, and that such an allocation of economic benefits and burdens had always been subject to adjustment, expressly noting that "it [was] not unusual that carriers or employers have had their burdens shifted or increased with relation to past industrial accidents." *Becker, supra,* at 1209–10. Finding that "from the direction that it be effective immediately, it must be inferred that the Legislature was interested in affecting as many cases as practicable," the court applied the amendment to the Workers Compensation Law to any judgment or settlement effected after the date of the amendment, "even if the injury occurred or the third-party action was brought before that date." *Id.*

The Third Department in *Majewski v. Broadalbin–Perth Central School District,* 231 A.D.2d 102, 661 N.Y.S.2d 293 (N.Y.A.D. 3rd Dept.(1997)) attempted to distinguish *Becker* in its decision holding that the 1996 amendment to Section 11 was not retroactive. The *Majewski* court stated that *Becker* was distinguishable as, in *Becker,* the Court of Appeals observed that neither "the available legislative studies or proposed bills furnish[ed] guidance, nor did the available proposed bills contain different language," whereas, in the legislative history of Section 11, the Legislature provided guidance by deleting retroactivity language contained in an earlier bill in favor of the verbiage "to take effect immediately." *Majewski, supra,* at 296–97. However, as previously noted, the legislative intent in the retroactive or prospective application of Section 11 is very ambiguous with the guidance provided by the Legislature minimal, except for the aforementioned colloquy between Assembly members Bragman and Weinstein to which the court ascribes limited authority. In this court's view, the Court of Appeals' holding in *Becker* leads to the conclusion that the Court of Appeals, in ascertaining the retroactivity of Section 11, would follow its own precedent set in *Westchester Lighting, Dole, Becker* and *Kelly* and adjudge the amendment to be retroactive to any accidents or injuries occurring prior to September 10, 1996 where the lawsuit is filed after September 10, 1996.

The court further notes that *Becker* rejects the notion expressed in *Gleason, supra,* that potential tortfeasors have a "vested" expectation of contribution and indemnity against an employer for pre-enactment accidents or injuries. *Becker, supra,* at 1210. It is difficult to see how a potential defendant has any basis for contending that it has a vested expectation as against an employer where, as here, a toxic tort is alleged that has manifested itself only after a long period of time. Even if such a vested right to contribution exists, as the Act has been held not to affect prior judgments and settlements, or indeed to affect cases pending on the date of enactment where expectations based on prior law may have attached, holding that the Act applies to pre-enactment accidents where the action is filed after the Act's effective date does not "suggest unfairness and [a] likelihood of disappointed expectations." *Becker, supra,* at 1210. Finally, the Act, as noted, specifically does not apply to pre-enactment indemnification agreements, further evidencing the fact that the legislature addressed and balanced any potential defeasance of such expectations between employers and defendants.

■ The exercise of diversity jurisdiction requires that federal courts ascertain and apply the governing state law at the time of

the decision. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Sargent v. Columbia Forest Products, Inc.,* 75 F.3d 86, 89 (2d Cir.1996). It is clear to this court that the Act became effective immediately as of September 10, 1986, and that, as such, in the absence of controlling appellate authority to the contrary, the Act should be applied to this lawsuit filed well after September 10, 1996.[4] Failure to do so would be contrary to the clear and unambiguous mandate of the term "effective immediately" and would permit a result contrary to the express command of Section 11 of the Act that an employer shall not be liable for contribution or indemnification in a third-party action relating to a workplace injury.

### CONCLUSION

Based on the foregoing, Third–Party Defendant's motion for judgment on the pleadings or, alternatively, for summary judgment, should be GRANTED.

DATED: March 17, 1998.

---

4. The court notes that Defendants place great emphasis on the New York statute of limitations provisions relating to toxic torts, along with the rule on initial exposure as the commencement date for statute of limitations purposes. The court finds these provisions irrelevant to the issues present in this case, and thus will not address them.