**Bonnie SARGENT, Plaintiff–Appellant,**

v.

**COLUMBIA FOREST PRODUCTS, INC., Defendant–Appellee.**

**No. 1298, Docket 94–9015.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 23, 1995.

Decided Jan. 16, 1996.

David F. Kelley, Hunter & Kelley, Orleans, Vermont (Michael Rose, St. Albans, Vermont, of counsel), for Plaintiff–Appellant.

Heather Briggs, Downs, Rachlin & Martin, Burlington, Vermont (Coddy Marx, of counsel), for Defendant–Appellee.

Before: LUMBARD and WINTER, Circuit Judges, and BATTS,* District Judge.

WINTER, Circuit Judge:

In March 1995, we affirmed Judge Parker's dismissal of Bonnie Sargent's complaint against her former employer, Columbia Forest Products, Inc. She now moves that we recall and modify our mandate based on claimed changes in Vermont law subsequent to our decision. We grant in part and deny in part.

## BACKGROUND

Sargent worked for Columbia for over fifteen years before she was discharged in October 1992. During the course of her employment, her right arm was injured, and she sought worker's compensation. After surgery, she resumed "light duty" at Columbia. Sargent claims that she performed her work adequately, although she was occasionally absent, but was twice warned that she was working too slowly. On October 9, 1992, she was dismissed.

Columbia distributes a handbook to employees that sets forth disciplinary procedures for attendance problems. The handbook defines "unexcused" absences and states appropriate procedures for management to follow in addressing them. The handbook provides for graduated sanctions and states that termination is appropriate upon the tenth unexcused absence. Sargent claims that in the year prior to her dismissal, she had accumulated only seven absences considered by Columbia to be unexcused. However, the handbook contains a broad disclaimer regarding its binding effect. It states that it "may not be construed under any circumstances as a contract or a binding agreement." It further indicates that all employment decisions are left to "the discretion of management" and that "any policy [stated in the manual] may be ... disregarded whenever management determines it is in the best interest of the company."

Sargent initially filed her complaint in Vermont state court. Based on diversity jurisdiction, see 28 U.S.C. § 1332, Columbia removed the action to the federal district court under 28 U.S.C. § 1441(a). Sargent's amended complaint asserted the following claims: (i) breach of implied covenants of good faith and fair dealing, (ii) breach of implied contract, (iii) discharge in retaliation for the exercise of her rights under the Vermont Workers' Compensation Act, Vt.Stat. Ann. tit. 21 §§ 601 et seq., (iv) termination in violation of public policy, and (v) promissory estoppel based on the employee handbook.

Judge Parker granted Columbia's motion to dismiss the complaint. On appeal, Sargent pursued only the good faith/fair dealing, retaliatory discharge, and promissory estoppel claims. We affirmed by unpublished summary order on March 13, 1995. See Sargent v. Columbia Forest Prods., Inc., 52 F.3d 311 (2d Cir.1995). We held that Sargent was an at-will employee and, therefore, could not assert a claim based on implied covenants of good faith and fair dealing. We upheld dismissal of the retaliatory discharge claim because the Vermont workers' compensation

---

* The Honorable Deborah A. Batts, United States District Judge for the Southern District of New York, sitting by designation.

statute provided a statutory remedy for such an act—an action by the state attorney general—and, under Vermont law at the time, "'[w]here a statute confers a remedy unknown to common law, and prescribes the mode of enforcing it, that mode alone can be resorted to.'" *Winney v. Ransom & Hastings, Inc.*, 149 Vt. 213, 542 A.2d 269, 270 (1988) (quoting *Thayer v. Partridge*, 47 Vt. 423, 428 (1875)). *See Sargent*, 52 F.3d 311, slip op. at 4. We affirmed dismissal of the promissory estoppel claim because of the breadth and specificity of the disclaimer. We thereafter denied Sargent's motion for rehearing. Our mandate issued on May 10, 1995.

On August 15, 1995, Sargent filed a petition for a writ of certiorari in the United States Supreme Court. Just prior to that filing, the Vermont Supreme Court decided *Ross v. Times Mirror, Inc.*, 665 A.2d 580 (Vt.1995), a case involving the legal effect of disclaimers in employee handbooks. Just after the filing, the Vermont Supreme Court decided *Murray v. St. Michael's College*, 667 A.2d 294 (Vt.1995), which held that a private right of action exists for a discharge in retaliation for the assertion of workers' compensation rights. On October 2, 1995, the United States Supreme Court denied Sargent's petition for a writ of certiorari, *see Sargent v. Columbia Forest Prods., Inc.*, — U.S. —, 116 S.Ct. 256, 133 L.Ed.2d 181 (1995).

On October 23, 1995, Sargent filed the instant motion to recall and modify our mandate with regard to the retaliatory discharge claim in light of *Murray* and the promissory estoppel claim in light of *Ross*.

## DISCUSSION

■ Our power to recall a mandate is unquestioned. *See generally* 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, *Federal Practice and Procedure* § 3938 (1977). The power "apparently originated in the inherent power of all federal courts to set aside any judgment during the term of court at which it was entered." *Id.* at 276. It "exists as part of the court's power to protect the integrity of its own processes," *Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir.1988), and is analogous to the power conferred on district courts by Fed.R.Civ.P. 60(b).

■ Amendments to the federal judicial code in 1948 extended this power beyond the current term of court, *see* 28 U.S.C. § 452, and we thus have the power to reopen a case at any time. *Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 53 (2d Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 86, 88 L.Ed.2d 70 (1985); *Patterson v. Crabb*, 904 F.2d 1179, 1180 (7th Cir.1990). *See also* 2d Cir.R. 27(c). However, this power is to be "exercised sparingly," *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 277 (D.C.Cir.1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972), and reserved for "exceptional circumstances." *Fine*, 758 F.2d at 53. The reason for parsimony in the exercise of our power to recall a mandate is the need to preserve finality in judicial proceedings. The Supreme Court has repeatedly underscored the sanctity of final judgments in our federal judicial system. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Assoc.*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931).

■ The exercise of diversity jurisdiction requires that we ascertain and apply governing state law at the time of decision. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Today, we are often aided in this endeavor by state statutes under which we may certify questions of state law to that state's highest court. *See, e.g.*, Conn.Gen.Stat. § 51–199a (Connecticut Supreme Court certification statute); N.Y.Rules of Court § 500.17 (New York Court of Appeals certification statute). However, Vermont has no certification statute.

In our earlier decision, therefore, we had to predict how Vermont courts would rule with regard to retaliatory discharge claims like Sargent's. Based upon a seemingly clear canon of statutory construction barring an implication of a private right of action where a statute provides an express right, we

confidently predicted that the Vermont Supreme Court would not imply a private right of action under the workers' compensation statute. Our prediction was incorrect. After our mandate had issued, *Murray* held that employees have a private right of action against Vermont employers who discharge them in retaliation for filing a workers' compensation claim.

■ One circumstance that may justify recall of a mandate is "[a] supervening change in governing law that calls into serious question the correctness of the court's judgment." *McGeshick v. Choucair,* 72 F.3d 62, 63 (7th Cir.1995); *see also Bryant v. Ford Motor Co.,* 886 F.2d 1526 (9th Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990); *Zipfel,* 861 F.2d at 567–68; *Davis v. Lawrence–Cedarhurst Bank,* 206 F.2d 388, 389 (2d Cir.), *cert. denied,* 346 U.S. 877, 74 S.Ct. 130, 98 L.Ed. 384 (1953). However, under the strict standards governing the exercise of power to recall a mandate, "an alleged failure to correctly construe and apply the applicable state law does not constitute" by itself a circumstance justifying recall. *Hines v. Royal Indem. Co.,* 253 F.2d 111, 114 (6th Cir.1958). Even where the law governing the disposition of a diversity case is unquestionably at odds with subsequent state court decisions, recall of the mandate is not necessarily justified.

> The very nature of diversity jurisdiction leaves open the possibility that a state court will subsequently disagree with a federal court's interpretation of state law. However, this aspect of our dual justice system does not mean that all diversity judgments are subject to revision once a state court later addresses the litigated issues. Such a rule would be tantamount to holding that the doctrine of finality does not apply to diversity judgments.

*DeWeerth v. Baldinger,* 38 F.3d 1266, 1272–74 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994). "Alleged erroneous rulings of law are generally not held to be sufficiently unconscionable to justify reopening a judgment not void when issued." *Powers v. Bethlehem Steel Corp.,* 483 F.2d 963, 964 (1st Cir.), *cert. denied,* 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106 (1973).

■ Nevertheless, a variety of factors lead us to conclude that a recall of the mandate is appropriate in this case. First, *Murray* is beyond any question inconsistent with our earlier decision. Second, Sargent's appeal papers not only made the argument that prevailed in *Murray* but also brought to our attention the fact that *Murray* was pending in the Vermont Supreme Court. Because Vermont has no certification statute, Sargent could not urge us to seek an authoritative decision from the Vermont Supreme Court. In the glare of perfect hindsight, we perhaps should have delayed our decision in the instant matter until *Murray* was decided.

Third, there was not a substantial lapse of time between issuance of our mandate and the present motion. When *Murray* was decided, a petition for a writ of certiorari was pending in the Supreme Court, and the motion to recall the mandate was filed within two weeks of the denial of the petition for certiorari. *Cf. DeWeerth,* 38 F.3d at 1269–70 (district court relief under Rule 60(b) reversed, and recall of mandate by court of appeals denied, where New York Court of Appeals decision on which motion rested was decided three years after denial of certiorari by United States Supreme Court). Recall of the mandate would thus not reopen a stale claim.

Fourth, the equities strongly favor Sargent. She originally brought the case in state court, Columbia having thereafter removed it to federal court. Had the action not been removed, her retaliation claim might have been dismissed by a Vermont trial court but surely would have been sustained on appeal because the case was on basically the same time track as *Murray.* Our earlier decision was, therefore, a windfall for Columbia which, by removal, deprived Sargent of the chance to have her claims considered by a Vermont state court. *See Pierce v. Cook & Co.,* 518 F.2d 720, 723 (10th Cir.1975), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976) (granting post-judgment relief in diversity case because of supervening contrary decision of Oklahoma state court, where litigants had been forced into federal court by removal and had therefore not voluntarily assumed

risk of federal court deciding issue of state law); *cf. DeWeerth,* 38 F.3d at 1273 (reversing grant of relief from judgment by district court under Fed.R.Civ.P. 60(b) and holding it inappropriate to reopen judgment because plaintiff, by bringing suit in federal rather than state court, knew any open issue of state law would be decided by a federal and not a New York state court; a contrary later result in state court therefore did not undermine the earlier federal decision or create any unfairness to litigants). We therefore recall the mandate with regard to the retaliatory discharge claim and remand that claim to the district court.

▮ Appellant's motion to recall the mandate with regard to her promissory estoppel claim is much less compelling. There is simply no patent inconsistency between *Ross* and our earlier decision. Indeed, *Ross* affirmed the dismissal of a promissory estoppel claim where an employee handbook included a disclaimer of considerably less breadth and specificity than that in the instant case. This is precisely the result reached by our prior decision. It is, therefore, not clear that *Ross* altered or even clarified Vermont law as it existed at the time of our earlier decision.

Sargent relies upon *Ross,* which, although pending in the Vermont Supreme Court, was not brought to our attention on appeal, to argue that the location of a disclaimer in an employee handbook is critical. We regard this argument as attenuated.[1] Moreover, the argument regarding location was not made to us on the appeal. Indeed, the appendix does not reveal the location of the disclaimer in Columbia's handbook. We thus made no prediction—correct or incorrect—regarding the significance of the location of the disclaimer.

The only question, therefore, is whether we ought to recall the mandate with regard

to the promissory estoppel claim and remand to the district court for reconsideration in light of *Ross* even though it is unclear that *Ross* changed the governing law at the time of our decision. Arguably, our decision to recall the mandate and remand the retaliation claim tempers considerations of finality because further proceedings are in any event inevitable. However, we conclude otherwise.

▮ First, parties and courts have an interest in finality with regard to the disposition of particular claims as well as the disposition of lawsuits as a whole. That is precisely why there is a law of the case doctrine. *See, e.g., Day v. Moscow,* 955 F.2d 807, 812 (2d Cir.), *cert. denied,* 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); *Liona Corp. v. PCH Assocs. (In re PCH Assocs.),* 949 F.2d 585, 592 (2d Cir.1991). Particularly where extensive and expensive pre-trial discovery and other pre-trial proceedings are involved, the narrowing of issues can be of considerable importance to the parties and to considerations of judicial efficiency. Even if litigation of an action is ongoing, the reopening of previously dismissed claims is thus not lightly contemplated. *See generally* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478 (1981); *see* 1B James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 0.401 (2d ed. 1995); *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815–18, 108 S.Ct. 2166, 2177–79, 100 L.Ed.2d 811 (1988); *Morley v. Ciba–Geigy Corp.,* 66 F.3d 21, 25 (2d Cir.1995); *Doe v. New York City Dep't of Social Servs.,* 709 F.2d 782, 788–90 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

▮ Second, the presumption against the reopening of previously dismissed claims is at its heaviest where the mandate has

---

1. Sargent's argument with regard to *Ross* goes as follows. *Ross* says that the effect of a disclaimer "depends" on the circumstances. 665 A.2d at 583. One page later, the opinion notes that the disclaimer "preceded" pertinent items in the handbook. *Id.* at 584. From this, Sargent argues that the effectiveness of a disclaimer "depends" upon its location. Even assuming that "preceded" meant "immediately before" and was a description of more than casual importance—assumptions that are hardly inexorable—

Sargent's argument appears to use the word "depends" in two significantly different ways. To say, as *Ross* did, that the effectiveness of a disclaimer "depends" on the circumstances may mean only that a disclaimer's language may be contradicted by a constellation of circumstances dictating otherwise. Sargent's argument that the effectiveness of a disclaimer "depends" on its location means that it is not effective unless one particular circumstance exists. *Ross* made no such statement.

issued. As noted, courts are exceptionally stingy in recalling mandates and have an interest in discouraging litigants from even seeking such relief. To suggest that recalling the mandate with regard to a single claim reopens an entire matter for reconsideration in light of intervening but non-dispositive state law decisions would encourage such motions by increasing the ante. We therefore believe that recalls of a mandate must be on a claim-by-claim rather than piggyback basis, with recall to be justified for each claim.

Finally, although Columbia prevails on the promissory estoppel claim, that victory cannot be described as a windfall. To be sure, the outcome might have been different—also might *not* have been different—if the action had not been removed, but that is an omnipresent feature of diversity cases removed to federal courts. Indeed, that possibility is present with or without *Ross.*

## CONCLUSION

We grant the motion to recall the mandate with regard to the retaliatory discharge claim and remand that claim to the district court. The promissory estoppel claim remains dismissed.