**Harold SCOTT, Plaintiff,**

v.

**Lt. G. GARDNER, et al., Defendants.**

**No. 02 CIV. 8963(RWS).**

United States District Court,
S.D. New York.

Nov. 9, 2004.

Harold J. Scott, Great Meadow Correctional Facility, Comstock, NY, for Plaintiff Pro Se.

Honorable Eliot Spitzer, Attorney General of New York State, New York City, by Steven N. Schulman, Assistant Attorney General, of Counsel, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff Harold Scott ("Scott"), proceeding *pro se*, has moved, pursuant to Fed. R.Civ.P. 60(b), for reconsideration of this Court's opinion entered on October 31, 2003, *see Scott v. Gardner*, 287 F.Supp.2d 477 (S.D.N.Y.2003) (the "Opinion"). Scott seeks reconsideration of the Opinion to the extent that it dismissed (1) cause of action 1 in its entirely and a portion of cause of action 3 on the grounds that administrative remedies had not been exhausted, and (2) causes of action 4–10 on the grounds that

Scott's confinement in the Special Housing Unit ("SHU") did not implicate liberty interests and that, in any case, no due process rights were violated. For the reasons set forth below, this motion is granted in part and denied in part.

### Prior Proceedings

The instant motion was received by the Court on September 17, 2004. After submission of briefs, the motion was deemed fully submitted without oral argument on October 13, 2004.

### Facts

The following allegations, which do not constitute findings of the Court, were recounted in the Opinion.

Scott is a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"). Defendants are employed by DOCS or the New York State Office of Mental Health ("OMH"). During the relevant time period, Scott was first incarcerated at Sullivan Correctional Facility ("Sullivan") and then at Fishkill Correctional Facility ("Fishkill"). Scott is currently incarcerated in Great Meadow Correctional Facility in Comstock, New York.

Scott has alleged that defendants violated 42 U.S.C. § 1983 by retaliating against him for bringing a previous lawsuit in this district. *See Scott v. Coughlin*, 78 F.Supp.2d 299 (S.D.N.Y.2000). Specifically, the complaint alleged that Scott was subjected to the following:

1. twelve unwarranted urine tests administered between September 11, 1998 to March 26, 1999 (cause of action 1);

2. a March 19, 1999 disciplinary proceeding during which due process and privacy rights were allegedly violated (causes of action 4–11);

3. unwarranted psychiatric treatment at an OMH facility in Sullivan from November, 1998 until April, 1999 (cause of action 2); and

4. transfer to Fishkill on April 2, 1999, where Scott was held in that facility's Special Housing Unit ("SHU") (cause of action 3).

### Discussion

Scott's motion for reconsideration is based on two arguments: (1) that with respect to causes of action 1 and 3, under recently decided Second Circuit cases, Scott did, in fact, exhaust his administrative remedies, and (2) that with respect to causes of action 4–10, the court conducted an improper review of the record and overlooked controlling Second Circuit law that mitigated against dismissal of cause of action 6.

### 1. Standard of Review

Rule 60(b) provides, in pertinent part, that:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). Based on Scott's motion, it is assumed that he is seeking reconsideration pursuant to Rule 60(b)(6). ▮ "A motion under Rule 60(b) is addressed to the sound discretion of the trial court." *Velez v. Vassallo*, 203 F.Supp.2d 312, 333 (S.D.N.Y.2002) (citing *Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990)). Nonetheless, the Second Circuit has cautioned that Rule 60(b) provides "extraordinary judicial relief" to be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986); *see also Employers Mut. Cas. Co. v. Key Pharm.*, 75 F.3d 815, 824–25 (2d Cir.1996) ("A movant under Rule 60(b) must demonstrate 'exceptional circumstances' justifying the extraordinary relief requested."). In evaluating a Rule 60(b) motion, the courts of this circuit also require that the evidence in support of the motion be highly convincing, that the movant show good cause for the failure to act sooner, and that no undue hardship be imposed on the other parties as a result. *See, e.g., Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir.1987); *Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78, 84 (S.D.N.Y.2003).

### 2. Exhaustion of Scott's Administrative Remedies (Causes of Action 1 & 3)

The crux of Scott's motion is that in light of cases decided by the Second Circuit in August, 2004, the Court should reconsider its determination that he failed to exhaust his administrative remedies with respect to the retaliatory urine tests.

### A. The Court's October 2003 Holding with Respect to Exhaustion

As recounted in the Opinion, Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") states that:

No action shall be brought with respect to prison conditions under section 1983 . . . or any other federal law . . . by a

prisoner ... until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

Courts interpreting this statutory provision have held that § 1983 claims brought by inmate plaintiffs must be dismissed if administrative remedies have not been exhausted. *See Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Alexandroai v. California Dep't of Corrections,* 985 F.Supp. 968, 970 (S.D.Cal. 1997) (plaintiff must "work within the prison system to have his case heard and then come to the Court after he has exhausted his administrative remedies as required by federal law"). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

Based on PLRA § 1997e(a) and the cases interpreting it, the Opinion held that Scott had not exhausted his administrative remedies as to any of the alleged retaliatory urine tests. On this basis, all of the first cause of action and parts of the third cause of action were dismissed.

### B. *Recent Second Circuit Decisions*

The Second Circuit addressed the PLRA § 1997e(a) exhaustion requirements in five companion cases decided on August 18, 2004. First, in *Ortiz v. McBride,* 380 F.3d 649, 663 (2d Cir.2004), the Circuit Court held that the presence of unexhausted claims in an inmate's § 1983 complaint does not compel dismissal of the action in its entirety. Second, in *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004), the Circuit Court held that "there are certain 'special circumstances' in which, though administrative remedies may have been available

and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless be justified." *Id.* at 676. Specifically, the *Giano* Court held that failure to exhaust administrative remedies is justified where the inmate reasonably believed that "DOCS regulations foreclosed such recourse." *Id.* at 678. Third, in *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004), the Circuit Court held that whether an inmate's appeal of a disciplinary conviction sufficed to exhaust administrative remedies hinged on whether the appeal provided "enough information about the conduct of which [the inmate] complain[s] to allow prison officials to take appropriate responsive measures." Fourth, in *Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004), the Circuit Court held that "[a] prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion." Fifth, in *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004), the Circuit Court held: (1) that the standard for assessing the availability of a grievance procedures is whether " 'a similarly situated individual of ordinary firmness' " would have deemed the procedure available, *id.* at 688 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003)); (2) that a defendant's actions inhibiting an inmate's exhaustion of remedies may estop assertion of failure to exhaust as an affirmative defense, *id.* at 686; and (3) that reasonable fear of retaliation is a "special circumstance" that justifies failure to exhaust available administrative remedies. *Id.* at 690.

### C. *Rule 60(b)(6) and Intervening Changes in Law*

"Intervening developments in the law by themselves rarely constitute the

extraordinary circumstances required for relief under Rule 60(b)(6) . . . ." *Agostini v. Felton*, 521 U.S. 203, 239, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *see also Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 757 (2d Cir.1986). However, where a "supervening change in governing law calls into serious question the correctness of the court's judgment," *Sargent v. Columbia Forest Prod., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996), a Rule 60(b)(6) motion may be granted. *See, e.g., Devino v. Duncan*, 215 F.Supp.2d 414, 418 (S.D.N.Y.2002).

■ Based on the Second Circuit holding in *Sargent*, courts of this district have used a four-factor test to determine whether an intervening change of law justifies the granting of a Rule 60(b)(6) motion. These factors are as follows:

> (1) whether the new law is "beyond any question inconsistent" with the earlier decision; (2) whether the moving party notified the court of a pending motion that may alter the decisional law; (3) whether "substantial" time had elapsed between the earlier decision and the pending motion; and (4) whether the equities strongly favor the moving party.

*Id.* (quoting *Sargent*, 75 F.3d at 90).

### D. *Reconsideration Is Warranted as to Whether Scott Exhausted Available Remedies for the Urine Tests*

■ In the Opinion, the determination that Scott had failed to exhaust the administrative remedies with respect to the allegedly retaliatory urine tests was based on four grounds.

First it was determined that Scott's numerous letters of complaint to DOCS administrators concerning the urine tests did not satisfy the exhaustion requirement because such letters were not part of the formal grievance process. This determination is not at odds with the Second Circuit's August 2004 decisions.

Second, based on a canvas of cases from this district, the Opinion determined that Scott's misinterpretation of the DOCS regulations[1] did not excuse his failure to exhaust available administrative remedies. *See Hemphill v. New York*, 198 F.Supp.2d 546, 549 (S.D.N.Y.2002); *Beatty v. Goord*, 210 F.Supp.2d 250, 255–56 (S.D.N.Y.2000). However, these cases are contradicted by the *Giano* holding that failure to exhaust administrative remedies is justified where the inmate reasonably believed that "DOCS regulations foreclosed such recourse." *Giano*, 380 F.3d at 678; *see also Johnson*, 380 F.3d at 697 (describing the DOCS grievance regulations as "confusing"). Based on *Giano*, there is an open question as to the reasonableness of Scott's mistaken belief that the grievance process was unavailable to him.

Third, the Opinion rejected Scott's argument that he exhausted available administrative remedies by challenging the repeated urine tests during his appeal of the March 19, 1999 disciplinary hearing. Based on prior decisions, the Court held that such challenges did not relieve Scott of the obligation to address defendants' conduct through the formal grievance process. *See McCoy v. Goord*, 255 F.Supp.2d 233, 256 (S.D.N.Y.2003); *Cherry v. Selsky*, No. 99 Civ. 4636(HB), 2000 WL 943436 at

---

**1.** Scott stated that he could not have grieved the repeated urine tests because the defendants had not exceeded the DOCS-authorized limits for random testing under the former 7 N.Y.C.R.R. § 1020.4(a)(3), which permitted no more than five random tests in a twelve-month period. This provision not withstand-

ing, the Opinion determined that Scott could have grieved the urine tests pursuant to 7 N.Y.C.R.R. § 701.11(a), which provides an expedited grievance process for allegations of "employee misconduct meant to annoy, intimidate or harm an inmate."

*6–7 (S.D.N.Y. July 7, 2000). However, a different outcome might have been reached had this motion been heard after announcement of the *Johnson* holding that under certain circumstances, an inmate can raise a complaint through disciplinary appeal rather than by filing a separate grievance. *Johnson*, 380 F.3d at 698.

Finally, the Court held that Scott's attempts in 2002 to formally and informally grieve the urine tests were untimely. These determinations are not affected by the Second Circuit's August 2004 decisions.

Based on the foregoing, the first prong of the *Sargent* test is satisfied. The Second Circuit's August 2004 decisions are not consistent with earlier decisions from this district.[2] The fourth *Sargent* prong, the balance of equities, also weighs strongly in favor of granting plaintiff's Rule 60(b)(6) motion. Scott has alleged serious misconduct on the part of DOCS employees that resulted in significant negative consequences for him. Based on previous decisions, the merits of Scott's allegations with respect to the urine tests were not reached. Whether there is now a basis for these allegations to be heard is offset, to some extent, by the other prongs of the *Sargent* test: The Opinion was entered more than ten months prior to the Second Circuit's August 2004 decisions (*Sargent* prong 2), and the Court had no reason to

know that the Second Circuit decisions were in the offing at the time that the Opinion was entered (*Sargent* prong 3).

Having weighed the *Sargent* factors, reconsideration is warranted as to whether, in light of the Second Circuit's August 2004 decisions, Scott exhausted available administrative remedies with respect to the allegedly retaliatory urine tests. The parties will submit, within 30 days of the filing of this opinion, any additional material on this issue.

### 3. *Scott's Due Process Claims (Causes of Action 4–10)*

■ Reconsideration is not warranted with respect to Scott's claim that his confinement in Fishkill's SHU violated his right to procedural due process.

### A. *No Deprivation of a Liberty Interest*

Scott contends that three recent Second Circuit decisions compel reconsideration of the Court's determination that Scott's confinement in SHU failed to implicate a liberty interest. In two cases cited by Scott, Second Circuit panels held that an SHU sentence of any length can constitute a deprivation of a liberty interest if the SHU conditions were sufficiently harsh. *See Ortiz*, 380 F.3d at 655;[3] *Palmer v. Richards*, 364 F.3d 60, 66 (2d Cir.2004).[4] In

---

**2.** Defendants argue that "the Second Circuit's recent decisions on the question of exhaustion of administrative remedies do not change the law in any relevant respects." Letter from Schulman of October 12, 2004, at 1. This assessment significantly understates the extent of the Second Circuit's departure from prior law regarding the PLRA § 1997e(a) exhaustion requirement.

**3.** The *Ortiz* court held that an SHU sentence of 90 days could constitute a deprivation of a liberty interest where it was alleged that the inmate was confined in SHU for 24 hours per day (the typical period of daily SHU confine-

ment is 23 hours), that he was denied the hour of daily exercise provided to most SHU inmates, and that he was not permitted to shower for weeks on end. *Ortiz*, 380 F.3d at 655.

**4.** The *Palmer* court held that an SHU sentence of 70 days constituted a deprivation of liberty where it was alleged that the inmate was deprived of nearly all personal property, mechanically restrained whenever escorted outside his cell, and denied any opportunity to communicate with his family. *Palmer v. Richards*, 364 F.3d at 66.

the other case cited by Scott, *Sira v. Morton,* 380 F.3d 57, 69 (2nd Cir.2004), a Second Circuit panel assumed, without deciding, that an SHU sentence of 180 days could constitute a deprivation of a liberty interest.

These holdings, which stand for the established proposition that SHU sentences implicate liberty interests when they are unusually long or unusually harsh, are consistent with the Second Circuit decisions relied on in the Opinion. *See Colon v. Howard,* 215 F.3d 227, 230 (2d Cir.2000) (stating that SHU confinement does not implicate liberty interests "unless the confinement subjected the prisoner to 'atypical and significant hardship' . . . in relation to the ordinary incidents of prison life.") (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Moreover, the Second Circuit has held that confinement in "normal SHU conditions" for up to 101 days does not violate the *Sandin* test. *Colon,* 215 F.3d at 231; *Sealey v. Giltner,* 197 F.3d 578, 589–90 (2d Cir.1999).

As described in the Opinion, the conditions of Scott's SHU confinement were not significantly different from those determined to be normal by the *Colon* and *Sealey* courts.[5] This determination that no liberty interest was implicated is not affected by the above-described Second Circuit decisions.

### B. *No Denial of Procedural Due Process*

■ Scott alleges that the Court should reconsider its determination that his right to procedural due process was not violated during the course of the March 19, 1999 disciplinary hearing. First, Scott argues the Court should not have considered a hearing transcript for the purpose of evaluating defendants' Rule 12(b)(6) motion to dismiss the due process claims. Defendants argue that Scott should be estopped from asserting this position because he submitted a variety of extrinsic evidence in opposition to defendants' motion. It is noteworthy that Scott annexed an excerpt of the hearing transcript and other documents to his complaint. In any event, this sort of alleged procedural error cannot constitute an extraordinary circumstance justifying reconsideration pursuant to 60(b)(6). Furthermore, Scott has failed to demonstrate, as he must, that he had good cause for failing to raise this procedural issue sooner. *See Kotlicky v. U.S. Fidelity & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987).

Scott also argues that the Court should reconsider its dismissal of cause of action 6, which alleged that the hearing officer—defendant Longobardo—failed to consider Scott's defense that he was improperly selected for urine tests. Scott asserts that the Court (1) misconstrued this claim as arising solely under New York statutory law and (2) overlooked *Colon v. Coughlin,* 58 F.3d 865, 871 (2d Cir.1995), which holds that a hearing officer's refusal to consider an inmate's plausible defense constitutes a denial of due process. Neither of these arguments has merit. The Opinion makes clear that cause of action 6 was dismissed based on the Court's finding that Scott had, in fact, been permitted at the hearing to raise the arguments that the random drug testing may have been a "hoax" and a cover for the lack of evidence to administer a drug test on suspicion.

Based on the foregoing, Scott's motion for reconsideration of the Court's dismissal of causes of action 4–10 is denied.

---

5. According to the *Colon* court, normal SHU conditions included confinement for 23 hours daily, one hour of daily exercise, two showers a week, and denial of various privileges available to inmates in the general population. *Colon,* 215 F.3d at 230.

### Conclusion

Scott's motion for reconsideration of whether his administrative remedies were exhausted with respect to the urine tests is granted as provided in this opinion. His motion for reconsideration of causes of action 4–10 is denied.

It is so ordered.