Taylor v. United States

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Argued: April 7, 2016          Decided: May 13, 2016)

Docket No. 15-827

_____

JAVEL TAYLOR,

*Petitioner-Appellant*,

—v.—

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

_____

B e f o r e:

KATZMANN, *Chief Judge*, CABRANES, *Circuit Judge*, and KAPLAN, *District Judge.**

_____

_____

* The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

Appellant Javel Taylor appeals from the denial of his motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. In that motion, Taylor alleged that his counsel appointed under the Criminal Justice Act failed to timely inform him of our decision affirming his conviction and sentence and thereby deprived Taylor of the opportunity to petition for rehearing and rehearing *en banc*. We hold that the Criminal Justice Act provides financially eligible defendants with the right to the assistance of counsel when filing petitions for rehearing and rehearing *en banc* and that, where counsel fails to fulfill that obligation and the defendant acts with diligence in seeking relief, we may recall the mandate to allow the defendant an opportunity to timely petition for rehearing or rehearing *en banc*. In this case, Taylor has not yet had an opportunity to prove the truth of his allegation that he was deprived of his statutory right to the assistance of counsel when seeking rehearing, and we therefore remand for further factual development.

—————————

AMY LESTER (Margaret Garnett, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for the United States*.

RANDOLPH Z. VOLKELL, Merrick, NY, *for petitioner-appellant*.

—————————

KATZMANN, CHIEF JUDGE:

The Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, entitles financially eligible defendants to the assistance of counsel when petitioning for a writ of certiorari. In *Nnebe v. United States*, we held that the "unusual remedy" of recalling a mandate is available when counsel appointed under the CJA

2

interferes with that right by "promis[ing] to file a certiorari petition, but fail[ing] to do so."  534 F.3d 87, 88, 91 (2d Cir. 2008).  Recalling the mandate allows us to reenter judgment in the direct appeal and, thus, restart the clock for filing a petition so that the defendant may timely seek relief.

This case requires us to determine whether the same remedy is available when CJA counsel fails to timely inform a defendant that his conviction has been affirmed and thereby deprives the defendant of an opportunity to petition for rehearing or rehearing *en banc*.  We conclude that it is, but that appellant Javel Taylor has not established his entitlement to such relief at this stage.  Because, however, Taylor has not had an opportunity below to substantiate his allegations, we remand for further factual development.

## BACKGROUND

On December 1, 2011, a jury convicted Taylor of one count of conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846 and one count of distributing crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). The district court sentenced Taylor to 84 months' imprisonment.  Taylor, with the assistance of counsel appointed under the CJA, timely appealed.  On October 21,

3

2013, we affirmed his conviction and sentence by summary order. *See United States v. Fitzgerald*, 542 F. App'x 30, 31 (2d Cir. 2013). The mandate issued on November 14, 2013.

On January 7, 2014, less than three months later, Taylor filed a *pro se* motion under 28 U.S.C. § 2255 to vacate his conviction and sentence. Of particular relevance here, Taylor argued that his counsel provided ineffective assistance of counsel by failing to timely notify Taylor that his appeal had been decided, which had the effect of depriving Taylor of an opportunity to petition for rehearing and rehearing *en banc*. Taylor alleged that he first learned that his appeal had been decided from a "paralegal service" a month after the decision had been rendered and, thus, past the fourteen-day period during which a petition may be filed. *See* Fed. R. App. P. 35(c) & 40(a).

The district court denied Taylor's motion. The court assumed, *arguendo*, that the Sixth Amendment right to effective assistance of counsel applies to petitions for rehearing and rehearing *en banc*, but held that Taylor had not established that he suffered any prejudice from his inability to petition since "it is highly unlikely that a petition for rehearing or rehearing *en banc* would have

4

been granted" and Taylor had "identified no issue that the Second Circuit panel incorrectly decided." App. at 10. Given this disposition, the United States District Court for the Southern District of New York (Paul G. Gardephe, *Judge*) declined to hold an evidentiary hearing to allow Taylor to offer proof of his allegations. The district court also denied Taylor a certificate of appealability.

Taylor then moved *pro se* in this Court for a certificate of appealability. We granted the motion with respect to a single issue: "whether Appellant is entitled to relief pursuant to *Nnebe v. United States*, 534 F.3d 87, 89–92 (2d Cir. 2008), on his claim that his attorney, who was appointed under the Criminal Justice Act, failed to timely inform Appellant of this Court's adverse decision on direct appeal, thus causing Appellant to lose his opportunity to petition for rehearing or rehearing *en banc*." App. at 26. We also directed the Clerk's Office to appoint new CJA counsel to represent Taylor in this limited appeal.

## DISCUSSION

On appeal, and now with the assistance of counsel, Taylor urges us to construe his appeal of the district court's judgment as a motion to recall the mandate in his direct appeal and to vacate our original judgment and reenter

5

judgment. Doing so would allow Taylor an opportunity to timely seek rehearing.

We resolve Taylor's request for relief in three steps. The first two are of general application. First, we determine that the CJA affords financially eligible defendants the right to representation when petitioning for rehearing and rehearing *en banc*. Second, we conclude that the remedy of recalling the mandate is available when counsel appointed under the CJA fails to provide such assistance. Having resolved these two issues in Taylor's favor, we address a third question, in particular, whether Taylor has established his entitlement to relief here. On this final issue, we conclude that Taylor has not yet had an opportunity to offer proof of his allegations and, accordingly, we remand for further proceedings.

## I.

We begin by addressing the scope of representation under the CJA. "[T]he CJA establishes the broad institutional framework for appointing counsel for a criminal defendant who is financially unable to obtain representation." *United States v. Parker*, 439 F.3d 81, 91 (2d Cir. 2006). Defendants eligible to receive CJA

6

counsel are entitled to representation in a broad range of proceedings, including, for example, when charged with a violation of supervised release, 18 U.S.C. § 3006A(a)(1)(E), when held in custody as a material witness, *id.* § 3006A(a)(1)(G), and when, as here, facing a felony charge, *id.* § 3006A(a)(1)(A). The CJA further provides that defendants who are entitled to counsel "shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the [district] court through appeal, including ancillary matters appropriate to the proceedings." *Id.* § 3006A(c). When a defendant "appeals to an appellate court or petitions for a writ of certiorari, he may do so without prepayment of fees and costs or security therefor." *Id.* § 3006A(d)(7).

It is now settled that these provisions guarantee eligible defendants the right to representation when seeking a writ of certiorari from the Supreme Court. The Supreme Court has twice granted late-filed *pro se* petitions for certiorari and remanded for further proceedings when a defendant's CJA counsel, without adequate justification, failed to assist in the filing of a timely petition. *See Wilkins v. United States*, 441 U.S. 468 (1979) (per curiam); *Sotelo v. United States*, 474 U.S. 806 (1985); *see also United States v. Sotelo*, 778 F.2d 1125, 1126 (5th Cir. 1985). Our

7

circuit plan implementing the CJA, *see* 18 U.S.C. § 3006A(a) (directing each circuit to create a plan "with provisions for representation on appeal"), has also incorporated this understanding of the CJA, providing, in relevant part:

> In the event of a decision adverse to the CJA client in this Court, the CJA attorney shall promptly transmit to the CJA client a copy of the Court's decision, advise the CJA client in writing of the right to file a petition for writ of certiorari with the United States Supreme Court, inform the CJA client of the CJA attorney's opinion as to the merit and likelihood of success in obtaining such a writ, and if requested to do so, petition the Supreme Court for certiorari. Despite a CJA client's directive to file a writ, if a CJA attorney has reasonable grounds to believe that a petition for certiorari would have no likelihood of success, the CJA attorney may file with this Court a motion to be relieved and serve a copy on the CJA client and other counsel within ten days of the filing of an adverse decision of this Court. If the Court relieves the CJA attorney, he or she shall, within 48 hours after such motion is granted, so advise the CJA client in writing and inform the CJA client concerning the procedures for filing a petition for a writ of certiorari pro se.

Second Cir. Local R., Appendix Part A: Amended Plan to Implement the Criminal Justice Act of 1964 (June 18, 2010) ("CJA Plan") § IX.C. Other circuits' plans provide eligible defendants with materially the same protections.

We have never before considered, however, whether the CJA also entitles defendants to representation when seeking rehearing and rehearing *en banc*. We

8

now conclude that it does. Although the CJA does not explicitly address petitions for rehearing or rehearing *en banc*, it provides, as noted, that eligible defendants "shall be represented . . . through appeal." 18 U.S.C. § 3006A(c). We retain jurisdiction—and an appeal does not conclude—until the mandate issues, *see United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996), and under the Federal Rules of Appellate Procedure, the mandate will not issue until after the time to petition for rehearing and rehearing *en banc* expires, *see* Fed. R. App. P. 41(b). It follows that the right to assistance "through appeal" encompasses the right to assistance with seeking rehearing and rehearing *en banc*. Further, given that the CJA has been uniformly interpreted to provide defendants with the assistance of counsel when seeking review in the Supreme Court, it would be anomalous to find that defendants have no right to representation in the antecedent process of seeking rehearing in the court of appeals.

Of course, this does not mean that CJA counsel must always file a petition for rehearing or rehearing *en banc* whenever a defendant requests. Just as counsel may move to be relieved from filing a frivolous direct appeal, *Anders v. California*, 386 U.S. 738, 744 (1967), or a frivolous petition for certiorari, *Austin v.*

9

*United States*, 513 U.S. 5, 8 (1994) (per curiam), counsel may also move to be relieved from filing a frivolous petition for rehearing or rehearing *en banc*. But even in such cases, counsel has a duty to inform the defendant of the opportunity to petition *pro se*, and the defendant receives the protection of the court's independent determination of whether additional proceedings would be frivolous.

In cases where counsel does find it necessary to move to withdraw, counsel should do so in a timely fashion and also file on the defendant's behalf a motion for an extension of time to petition for rehearing or rehearing *en banc*. This will ensure that the time it takes counsel to withdraw does not inadvertently deprive the defendant of his right to file a *pro se* petition.

Our view that the CJA affords defendants the right to assistance with filing non-frivolous petitions and to notice of the opportunity to petition *pro se* comports with that of every court of appeals to address this question. Two courts of appeals have incorporated this understanding of the CJA into their plans implementing the statute. *See* Revision of Part V of the Eighth Circuit Plan to Implement the Criminal Justice Act of 1964 (Apr. 15, 2015); Eleventh Circuit

10

Plan Under the Criminal Justice Act § (f)(5) (Dec. 2009).[1]  Additionally, the

Seventh Circuit has interpreted the CJA, when read in conjunction with the

Federal Rules of Criminal Procedure and Seventh Circuit local rules, to provide

"that the defendant in a direct criminal appeal has the right to have the

continued representation of appointed counsel throughout the course of the

appeal, including the filing of post-opinion pleadings in the court of appeals."

*United States v. Howell*, 37 F.3d 1207, 1209 (7th Cir. 1994) (Ripple, J., in chambers).

Similarly, the Third Circuit has explained that, where CJA counsel determines

that a petition for rehearing would be frivolous, counsel must, in addition to

filing a motion to withdraw, inform the defendant of the opportunity to petition

*pro se*.  *See United States v. Coney*, 120 F.3d 26, 28 (3d Cir. 1997).  Finally, a number

of unreported decisions are in accord.  *See, e.g.*, *United States v. Gamble*, 396 F.

App'x 864, 866 n.1 (3d Cir. 2010) (granting motion to withdraw, but requiring

counsel to "timely" transmit a copy of the decision, which included information

---

[1] The Eight Circuit's plans is available at
media.ca8.uscourts.gov/newrules/coa/Plan_V_Revision.pdf, and the Eleventh
Circuit's is available at
http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/RulesAddendum0
4DEC09.pdf.

11

about filing a petition *pro se*, to the defendant); *United States v. Palacios*, 347 F. App'x 273, 274 (8th Cir. 2009) ("We also grant counsel's motion to withdraw on condition that counsel inform appellant about the procedures for filing petitions for rehearing and for certiorari . . . ."); *United States v. Masters*, 976 F.2d 728, at *3 (4th Cir. Sept. 22, 1992) ("Where, as here, counsel, in the exercise of professional judgment, could find no grounds for rehearing but did assist his client by moving for an extension of time [so that a *pro se* petition could be filed], we cannot find a denial of effective assistance.").

To summarize, we hold that the CJA entitles defendants to representation in filing non-frivolous petitions for rehearing and rehearing *en banc*. Where counsel determines that a petition would be frivolous, counsel should inform the client of the opportunity to petition *pro se*, move to withdraw, and at the same time, move on behalf of the CJA client for an extension of time to file a *pro se* petition.

## II.

We next consider whether any remedy is available to defendants whose CJA counsel fail to timely provide assistance with petitions for rehearing or

12

rehearing *en banc*. When such a failure occurs, a defendant's right to assistance may only be restored if we recall the mandate and reenter judgment to restart the clock for the time to file a timely petition. We now hold that this relief is available.

We possess "an inherent power to recall [a] mandate, subject to review for abuse of discretion." *Bottone v. United States*, 350 F.3d 59, 62 (2d Cir. 2003). No formal test governs the exercise of this discretion. *See* 16 Charles A. Wright, et al., Federal Practice and Procedure § 3938 (3d ed. 2015).[2] In recognition of the "need to preserve finality in judicial proceedings," however, we exercise our authority "sparingly . . . and only in exceptional circumstances." *United States v.*

---

[2] We recognize that the Supreme Court has offered more specific guidance for recalling the mandate "where a federal court of appeals *sua sponte* recalls its mandate to revisit the merits of an earlier decision denying habeas corpus relief to a state prisoner." *See Calderon v. Thompson*, 523 U.S. 538, 558 (1998) (holding that, in such cases, "the court abuses its discretion unless it acts to avoid a miscarriage of justice as defined by [the Supreme Court's] habeas corpus jurisprudence"). In addition, this Court has developed specific factors to consider when deciding whether to recall a mandate based on a litigant's claim that "a supervening change in governing law . . . calls into serious question the correctness of the court's judgment." *See Stevens v. Miller*, 676 F.3d 62, 69 (2d Cir. 2012) (quoting *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)). Those cases, however, did not involve recalling a mandate in order to ensure the effective implementation of the CJA. *Cf. Wilkins*, 441 U.S. at 469.

*Redd*, 735 F.3d 88, 90 (2d Cir. 2013) (per curiam) (internal quotation marks omitted).

As noted at the outset of this opinion, we found this exacting standard satisfied in *Nnebe v. United States*, which concerned similar allegations of a deprivation of the statutory right to assistance, albeit at the certiorari stage. After we affirmed Nnebe's conviction and sentence on direct appeal, Nnebe's counsel informed him of our decision and explained that Nnebe "must now seek a writ of certiorari in the Supreme Court." *Nnebe*, 534 F.3d at 88 (internal quotation marks omitted). Presumably to facilitate that effort, Nnebe's counsel provided Nnebe with a draft petition and instructed him to complete a motion to file *in forma pauperis*, which Nnebe alleged that he did. *Id.* Counsel, for reasons that are unclear, never filed the petition, however. *Id.* Additionally, he later failed to respond to Nnebe's request to provide him with a copy of our decision. *Id.* Nnebe then moved *pro se* for relief in the district court under 28 U.S.C. § 2255, claiming, among other things, that his counsel's failure to file the petition violated the Sixth Amendment. *Nnebe*, 534 F.3d at 89. The district court denied the motion in full and, with respect to the Sixth Amendment claim, concluded

14

that Nnebe had no constitutional right to effective assistance of counsel when seeking certiorari. *Id.*

When the case reached this Court, we declined to review the merits of the district court's decision and instead construed Nnebe's appeal as a motion to recall the mandate in his direct appeal. We recognized—and, indeed, the government did not dispute—that Nnebe's counsel's conduct violated the provision of our CJA Plan that incorporates the requirement that, when a client requests assistance seeking review in the Supreme Court, counsel must either file a petition for certiorari on the client's behalf or move to withdraw from the case if the petition would be frivolous. *See id.*; CJA Plan § IX.C (Dec. 12, 2007). In light of this violation and in order to make relief available, we determined that the appropriate remedy would be to "construe Nnebe's appeal as a motion to recall the mandate and vacate our judgment so that a new one can be entered in order to afford him an opportunity to petition for certiorari."[3] *Nnebe*, 534 F.3d at 91. In doing so, we rejected the government's argument that a defendant should

---

[3] Because Nnebe had been sentenced before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), we also remanded for resentencing pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). *See Nnebe*, 534 F.3d at 92.

be required to show prejudice before the mandate can be recalled, reasoning that imposing such a requirement "would both be inconsistent with our responsibilities to effectuate the CJA and to implement properly our CJA Plan, and would unduly interfere with our obligation to supervise court-appointed counsel." *Id.* at 91.  At the same time, however, we emphasized that we were "not retreat[ing] from our view that recalling a mandate is an unusual remedy intended for extraordinary circumstances," and we cautioned that we likely would not recall the mandate when a defendant fails to act with diligence or to proffer adequate proof of his allegations. *Id.* at 91–92.

The result in *Nnebe* followed in large part the Supreme Court's decision in *Wilkins v. United States*, 441 U.S. 468 (1979) (per curiam).  In that case, the Supreme Court was presented with a *pro se* petition filed seventeen months after the time to file had expired, a delay that resulted from CJA counsel's failure to file a petition despite assuring the defendant that he had done so. *Id.* at 468.  The *pro se* petition presented "a single question: 'What remedy is available for petitioner when court-appointed attorney failed and refused to file timely

petition for writ of certiorari in defiance of the petitioner's written request that same be done?'" *Id.* at 469.

"The answer," the Court explained, was "to be found in the Criminal Justice Act of 1964." *Id.* The Court endorsed the view of the Solicitor General that, under the CJA, "a person whose federal conviction has been affirmed is entitled to a lawyer's help in seeking certiorari."[4] *Id.* The Court further noted that the Solicitor General's interpretation was supported by the "Courts of Appeals for all of the Circuits[, which] provide in their rules or in plans adopted pursuant to the Criminal Justice Act that a court-appointed lawyer must, if his client wishes to seek review in this Court, represent him in filing a petition for certiorari." *Id.* Counsel therefore failed to fulfill his responsibilities under the CJA. Accordingly, to further the "strong interest in ensuring that lawyers appointed to aid indigents discharge their responsibilities fairly," the Supreme

---

[4] Specifically, the Solicitor General's interpretation relied on the section of the CJA providing that eligible defendants are entitled to representation "through appeal," 18 U.S.C. § 3006A(c); the section providing that CJA defendants may seek certiorari "without prepayment of fees," *id.* § 3006A(d)(7); and a section, not discussed above, that provides that, in habeas and revocation of parole proceedings, a district court has discretion to appoint counsel under the CJA, *id.* § 3006A(a)(2). *See Wilkins*, 441 U.S. at 469 (citing what was then 18 U.S.C. §§ 3006A(c), 3006A(d)(6), and 3006A(g)).

Court granted the petition, vacated the judgment below, and instructed the court of appeals to reenter judgment so that the petitioner could file a timely petition for certiorari. *Id.* at 470. In *Nnebe*, we interpreted *Wilkins* as "clearly signal[ling] that the Courts of Appeals should make appropriate relief available so that defendants are not disadvantaged by the failures in representation by CJA counsel." 534 F.3d at 91.

Heeding that advice here counsels that we make the remedy announced in *Nnebe* available when a CJA attorney fails to assist in the filing of a petition for rehearing or rehearing *en banc*. The same danger presented in *Wilkins* and *Nnebe* is presented here, namely, a violation of the CJA's guarantee of representation. Hence, supplying the same remedy will advance our efforts to supervise court-appointed counsel and to ensure that the CJA's aim of providing financially needy defendants with adequate representation is given effect. *See Nnebe*, 534 F.3d at 91. Likewise, since imposing on defendants a requirement to demonstrate prejudice would, as *Nnebe* recognizes, undermine these efforts, we decline to do so here as well. *Cf. McHale v. United States*, 175 F.3d 115, 118 (2d Cir. 1999) *("[R]equiring a *pro se* litigant on a section 2255 motion to demonstrate

18

the merit of a hypothetical appeal would undermine the right to counsel enjoyed by every criminal defendant on direct appeal.").  In reaching this holding, it bears noting, we join the only circuit judge to have to previously considered this issue.  *See United States v. Shaaban*, 514 F.3d 697, 698 (7th Cir. 2008) (Ripple, J., in chambers); *Howell*, 37 F.3d at 1210.[5]  As in *Nnebe*, though, we stress that the remedy of recalling the mandate is not to be liberally provided, and we will not recall the mandate where a defendant fails to act with diligence in seeking relief

---

[5] The Government seeks to distinguish *Shaaban* on the ground that the Seventh Circuit's plan implementing the CJA "explicitly requires that counsel file a petition for rehearing if requested to do so by the client and there are reasonable grounds to do so."  Brief for the United States at 12.  That is not so, though we do not fault the government for its view.  *Shaaban* did assert that the Seventh Circuit's plan "explains that it is counsel's duty to file a petition for rehearing if a defendant requests that counsel do so and there are reasonable grounds for such a petition."  514 F.3d at 699.  But a review of the Seventh Circuit's plan (which has not been amended since 1996, well before *Shaaban* was decided) shows that this statement was only a matter of interpretation, as that plan is materially the same as ours and makes no explicit mention of petitions for rehearing or rehearing *en banc*.  *See* Plan of the United States Court of Appeals for the Seventh Federal Circuit to Supplement the Plans of the Several United States District Courts Within the Seventh Circuit § V(3), *available at* www.ca7.uscourts.gov/Rules/rules.pdf.  *Howell*, which reached the same result and which the Government does not even attempt to distinguish, did not rely on the Seventh Circuit's CJA plan.  *See Howell*, 37 F.3d at 1209.

19

from CJA counsel's alleged failings or is unable to substantiate his allegations with adequate proof.

The government's principal argument opposing this result is that we may not recall the mandate unless our CJA Plan has been violated. According to the government, the violation of our Plan "was critical to the holding in *Nnebe*." Brief for the United States of America at 11. Thus, the government concludes, because our Plan imposes no explicit requirements on counsel with respect to petitions for rehearing or rehearing *en banc*, we cannot recall the mandate when a defendant complains that he has been deprived, without justification, of the statutory right to assistance with seeking rehearing.

We reject this interpretation of *Nnebe*. *Nnebe* did frame the question presented as what remedy is available when the CJA Plan had been violated, but nothing in the decision suggests that our holding hinged on there being a violation of the Plan in addition to a violation of the CJA statute itself. Indeed, as discussed, *Nnebe* relied heavily on *Wilkins*, which explained that the "answer" to what type of remedy should be supplied in these circumstances was to be "found" in the CJA. 441 U.S. at 469. And though *Wilkins* observed that the

courts of appeals had included in their plans a duty to assist defendants in filing

petitions for certiorari, it did so, we think, merely to lend support to the Solicitor

General's interpretation of the statute. Our primary concern in *Nnebe* was, as

here, ensuring that the CJA is implemented effectively. That aim is compromised

at least as much when the statute is violated as when our Plan is.[6]

Nor does anything in our case law on recalling the mandate require proof

of a violation of our CJA Plan. Although we are reluctant to exercise our

authority to recall the mandate, we have done so before to address similar

failings in counsel, even when no specific court rule has been violated. *See*

*McHale*, 175 F.3d at 120; *see also Bennett v. Mukasey*, 525 F.3d 222, 224 (2d Cir.

2008) (Newman, J., in chambers).

---

[6] In this particular case, we could also reject the government's argument for the additional reason that Taylor has, in fact, alleged a violation of the CJA Plan. Our Plan requires that, "[i]n the event of a decision adverse to the CJA client in this Court, the CJA attorney shall promptly transmit to the CJA client a copy of the Court's decision." CJA Plan ¶ IX.C. If Taylor's allegation that he never learned of our decision on his direct appeal until after the time to petition for rehearing is true, then Taylor's counsel necessarily failed to comply with that instruction.

Accordingly, we conclude that the mandate may be recalled when a defendant acts with diligence and offers proof that his CJA counsel failed to provide assistance filing a non-frivolous petition for rehearing or rehearing *en banc* or failed to timely move to withdraw and inform the defendant of the opportunity to petition *pro se*.

## III.

We turn finally to whether Taylor has established that the mandate should be recalled in this case. Under the framework articulated above, even when a defendant complains that his counsel failed to provide assistance with seeking rehearing—or, as here, deprived the defendant of the opportunity to seek rehearing at all—we will not recall the mandate unless the defendant acts diligently to obtain relief and offers proof that his allegations are true. Here, there is no dispute that Taylor acted with diligence in seeking relief less than three months after his direct appeal was decided, but the government argues that, because Taylor has offered only unsupported allegations, his request for relief should be denied.

We agree with the government that this deficiency precludes recalling the mandate at this stage. Because Taylor's claim was rejected below on the ground that he had failed to demonstrate prejudice without any inquiry into whether his allegations are true, however, the appropriate course is to remand to allow the district court to make factual findings regarding whether Taylor's counsel failed to timely inform Taylor of our decision affirming his conviction and sentence.[7] On remand, the district court should also receive evidence on whether Taylor's counsel ever informed him of the opportunity to petition for certiorari or moved

---

[7] We of course do not fault the district court for not holding an evidentiary hearing, as the possibility that Taylor may be entitled to relief for the reasons stated in this opinion was first raised in our order granting Taylor a certificate of appealability. Indeed, even had the district court considered the possibility that our mandate may be recalled, the district court itself would have been powerless to grant such relief. Thus, when faced in the future with a *pro se* motion under § 2255 that includes a defendant's claim that he has been deprived of his right under the CJA to assistance with petitioning for rehearing, rehearing *en banc*, or certiorari, the district court should stay its consideration of the § 2255 motion and direct the defendant to file a motion to recall the mandate in this Court. Additionally, in directing the defendant, the district court should explain that if the motion to recall the mandate is granted, the defendant must file a new § 2255 motion if his petition for rehearing, rehearing *en banc*, or certiorari is ultimately unsuccessful and a new judgment is entered against the defendant. Following this procedure will preserve the defendant's ability to pursue any other claims contained in the original § 2255 motion.

23

to withdraw from the case. *See* CJA Plan ¶ IX.C.[8] Finally, in considering each issue, the district court should offer Taylor's original CJA counsel "an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs" regarding his allegedly deficient representation of Taylor. *See Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998) (per curiam); *see also Bloomer v. United States*, 162 F.3d 187, 194 (2d Cir. 1998) (same).

## CONCLUSION

We reiterate that counsel appointed under the CJA must promptly advise their clients of our decisions, and we now make clear that, when those decisions are adverse, counsel must advise their clients of the opportunity not only to petition for certiorari, but also to petition for rehearing and rehearing *en banc*. Where a client requests that a petition for rehearing or rehearing *en banc* be filed, but counsel views the filing as frivolous, counsel should inform the client of the opportunity to petition *pro se*, move to withdraw, and, at the same time, file a motion for extension of time to petition so that the client may seek relief *pro se*. When this obligation is violated and a defendant acts diligently in seeking relief,

---

[8] Counsel for Taylor in this appeal should continue to represent him on remand. *See* CJA Plan § IX.G.

24

the mandate may be recalled so that our judgment can be vacated and reentered to allow for the filing of a timely petition.

In this case, Taylor has not yet had an opportunity to prove the truth of his allegation that his counsel failed to timely advise him of our decision affirming his conviction and thereby deprived Taylor of the right to petition for rehearing at all. Accordingly, we construe Taylor's appeal as a motion to recall the mandate, but we decline to grant the motion at this time and instead remand for further proceedings. We emphasize that we offer no view as to the merits of Taylor's allegations and leave that determination in the first instance to the district court, consistent with this opinion. After the district court makes the requisite factual findings, jurisdiction may be restored to this court by letter from either party, and the Clerk's Office shall set a briefing schedule and in the interests of judicial economy send such proceeding to this panel for disposition without oral argument unless otherwise ordered.